The STATE of Ohio, Appellee,

v.

Sherlonda POWELL, Appellant.

[Cite as *State v. Powell*, 176 Ohio App.3d 28, 2008-Ohio-1316.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22049.

Decided March 21, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

Anthony S. Vannoy, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Sherlonda Powell, appeals from her conviction and sentence for murder and tampering with evidence.

{¶ 2} Defendant Powell and Jeffrey Stephens were involved in a 14-year relationship that produced four children. Defendant and Stephens shared a home at 1705 W. Riverview Avenue in Dayton. On the night of June 10, 2005, defendant went to a local Dayton nightclub, the K-9 Club, with Stephens's sister, Jacinta Stephens, and Donna Dixon, a friend of Jacinta Stephens. Jeffrey Stephens stayed at home with the children.

{¶ 3} Defendant drank heavily and smoked marijuana at the club, and she got into an altercation with three young women at a nearby table whom she accused of taking her money. Defendant threw a chair at the three women, and when a bouncer intervened, defendant threatened to shoot him.

{¶ 4} Defendant was ejected from the club, and at that point, defendant was drunk, angry, and out of control. Defendant accused Jacinta Stephens and Donna Dixon of taking her money. Defendant threatened to go home, get a gun, and to return to the K-9 Club and shoot some people.

{¶ 5} Defendant returned home, where she retrieved a .25 caliber handgun. She subsequently shot Jeffrey Stephens in the chest, causing his death. The state's theory was that defendant shot Stephens when he tried to prevent her from leaving the house to return to the K-9 Club with the gun. Defendant claimed that she retrieved the gun because Jeffrey Stephens began to beat her and that the gun went off while they were wrestling and fighting over it.

{¶ 6} After Stephens was shot, defendant hid for a while and then fled to her sister's house, where she learned that Stephens had died. Defendant eventually fled to her father's home. Defendant's father convinced defendant to turn herself in to police. After defendant revealed where the gun could be found, defendant's father located the weapon and turned it over to police. Despite her claim that a physical fight with Jeffrey Stephens preceded the shooting, defendant did not complain of or exhibit any physical injuries that resulted from a fight.

{¶ 7} Defendant was indicted on two counts of felony murder in violation of R.C. 2903.02(B), one count of purposeful murder in violation of R.C. 2903.02(A), and one count of tampering with evidence, R.C. 2921.12(A)(1). A three-year firearm specification was attached to each of the murder charges. R.C. 2941.145.

{¶ 8} Defendant testified about her turbulent relationship with Jeffrey Stephens and the years of physical abuse by Stephens she and her children endured. Defendant claimed that she was suffering from battered women's syndrome at the time of the shooting. According to defendant, she retrieved a gun when

Stephens began hitting and beating her after she arrived home from the K–9 Club. The gun went off while they were fighting and wrestling over the gun. The jury rejected defendant's self-defense claim and found her guilty of both counts of felony murder with the firearm specifications, and tampering with evidence, but not guilty of purposeful murder. The trial court merged the two felony murder counts and sentenced defendant to prison terms totaling 18 years to life.

{¶ 9} Defendant timely appealed to this court from her conviction and sentence.

*FIRST ASSIGNMENT OF ERROR*

{¶ 10} "Appellant was deprived of due process and a fair trial through incomplete, inaccurate, and misleading jury instructions."

*SECOND ASSIGNMENT OF ERROR*

{¶ 11} "Appellant was deprived of due process, a fair trial, and her constitutionally guaranteed right to effective assistance of counsel through counsel's failure to object to incomplete, inaccurate, and misleading jury instructions."

{¶ 12} In these related assignments of error, defendant complains about various jury instructions that the trial court gave and defense counsel's deficient performance in failing to object to those instructions.

{¶ 13} A criminal defendant is entitled to have the trial court give the jury complete and accurate instructions on all of the issues of law raised by the evidence. *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279; *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583. Defendant's failure to object to any of the jury instructions about which she complains on appeal waives all but plain error. *State v. Wilson* (1996), 74 Ohio St.3d 381, 659 N.E.2d 292. Plain error does not exist unless but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

{¶ 14} With respect to claims of ineffective assistance of counsel, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id.; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

*Purpose Instruction*

{¶ 15} Count three of the indictment charged defendant with the purposeful murder of Jeffrey Stephens. Defendant contends that the instruction the court gave on the element of purposefulness was incorrect and that her attorney was ineffective for failing to object to the error. However, defendant was acquitted of the charge of purposeful murder. Therefore, any error the court committed could not have affected defendant's substantial rights and was therefore harmless and must be disregarded. Crim.R. 52(A). Likewise, no claim of ineffective assistance of counsel can lie, for lack of prejudice. *Strickland.*

*Self–Defense Instruction*

{¶ 16} Defendant's defense was that she was a battered woman who shot Jeffrey Stephens in self-defense. Defendant complains that the trial court's jury instructions on self-defense were erroneous, particularly the portion pertaining to defendant's duty to retreat, because they imply that defendant had a duty to retreat when she did not, this shooting having occurred inside defendant's own home, where she has no duty to retreat before resorting to the force necessary to repel an attack. *State v. Thomas* (1997), 77 Ohio St.3d 323, 673 N.E.2d 1339. Defendant further complains that her counsel performed deficiently in failing to object to the self-defense instructions.

{¶ 17} The trial court instructed the jury on self-defense as follows:

{¶ 18} "To establish self-defense regarding any of the charges of murder of Jeffrey D. Stephens, the defendant must prove, one, she was not at fault in creating the situation giving rise to the shooting of Jeffrey Stephens and, two, she had reasonable grounds to belief—to believe and an honest belief that she was in immediate danger of death or of great bodily harm and that her only means of escape from such danger was by the use of deadly force and she had not violated any duty to retreat to avoid the danger.

{¶ 19} "The defendant had a duty to retreat if she was at fault in creating the situation giving rise to the shooting of Jeffrey D. Stephens or if she did not have reasonable grounds to believe and an honest belief that she was in immediate danger of death or great bodily harm and that her only means of escape from the danger was by the use of deadly force. But if the defendant retreated or reasonably indicated her intention to retreat from the situation and no longer participate in it, she no longer had a duty to retreat, and if the defendant then had reasonable grounds to believe and an honest belief that she was in immediate danger of death or great bodily harm and that the only means of escape from that danger or great bodily harm was by the use of deadly force, the defendant was justified in using deadly force even though she was mistaken as to the existence of that danger.

{¶ 20} "If the defendant was assaulted in her own home, the defendant had no duty to retreat and could use such means as are necessary to repel the assailant from the home, even the use of deadly force, provided that she had reasonable grounds to believe and an honest belief that the use of deadly force was necessary to repel the assailant."

{¶ 21} A person who, through no fault of her own, is assaulted in her own home may stand her ground, meet force with force, and, if necessary, kill her assailant, without any duty to retreat. *Thomas,* 77 Ohio St.3d at 327, 673 N.E.2d 1339. However, if defendant was at fault in creating the situation that gave rise to the shooting of Jeffrey Stephens, then she had a duty to retreat even though the incident occurred inside her own home. *State v. Franklin,* Summit App. No. 22771, 2006-Ohio-4569, 2006 WL 2547959; *Thomas.*

{¶ 22} The trial court's self-defense instructions on defendant's duty to retreat were accurate and took into account different standards, depending upon whether the jury concluded that defendant was or was not at fault in creating the situation that gave rise to the shooting of Jeffrey Stephens. Because the court's instructions on self-defense were a complete and accurate statement of the law, there is no error, much less plain error, and defense counsel did not perform deficiently by failing to object to those instructions.

*Accident Instruction*

{¶ 23} Defendant testified that she is unsure what caused the gun to fire during her scuffle with Jeffrey Stephens. Defendant argues that because her testimony supported a defense of accident and/or self-defense, the trial court erred in failing to instruct the jury on accident, and defense counsel's failure to request such an instruction constituted deficient performance.

{¶ 24} A trial court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as fact-finder. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. An accident is an event that occurs unintentionally, without any design or purpose to bring it about. *State v. Fears* (1999), 86 Ohio St.3d 329, 715 N.E.2d 136. The concept of accident is tantamount to a denial that the act was purposeful or intentional. Id.

{¶ 25} A person's use of force in self-defense is necessarily a purposeful act. *State v. Florence,* Montgomery App. No. 20439, 2005-Ohio-4508, 2005 WL 2083079, at ¶ 49. Therefore, the defenses of accident and self-defense are mutually exclusive concepts. Id.; *State v. Barnd* (1993), 85 Ohio App.3d 254, 619 N.E.2d 518. Given the defense in this case that defendant was a battered woman who acted in self-defense when she shot Jeffrey Stephens, the trial court did not err by failing to instruct the jury that it could find that the shooting was an

accident. Defense counsel therefore did not perform in a deficient manner by failing to request such an inconsistent instruction.

*Note–Taking Instruction*

{¶ 26} The trial court instructed the jurors regarding note-taking prior to the commencement of testimony. Part of the court's instruction states: "The jurors who choose not to take notes must not be influenced by those who do take notes." Defendant argues that this instruction constituted error because it prohibited jurors who did not take notes from considering the opinion and views of those who chose to take notes.

{¶ 27} That is clearly not the effect the court's instruction should reasonably be expected to have on the jury. Viewing all of the court's instructions on note-taking as a whole, and in context, we find it clear that what the court said was that note-taking is merely a memory aid that must not take precedence over each person's independent memory of the evidence presented in open court. The court also instructed the jurors to "consider each other's views," and to "decide this case for yourself, but you should do so only after discussion and consideration of the case with your fellow jurors." No error, much less plain error, has been demonstrated. Neither has ineffective assistance of counsel been demonstrated.

{¶ 28} Defendant's first and second assignments of error are overruled.

*THIRD ASSIGNMENT OF ERROR*

{¶ 29} "Appellant's convictions are against the manifest weight of the evidence."

{¶ 30} A "weight of the evidence" argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagel* (Sept. 6, 1996), Montgomery App. No. 15563, 1996 WL 501470. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717:

{¶ 31} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord *State v. Thomas,* supra.

{¶ 32} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See *State v. McDaniel* (May 1, 1998), Montgomery App. No. 16221, 1998 WL 214606. The

fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.

{¶ 33} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. In *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, we observed:

{¶ 34} "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id. at *4.

{¶ 35} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 36} Defendant was found guilty of causing the death of Jeffrey Stephens as a proximate result of committing felonious assault by (1) knowingly causing serious physical harm and (2) knowingly causing physical harm by means of a deadly weapon. R.C. 2903.02(B) and 2903.11(A)(1) and (2). A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that those circumstances probably exist. R.C. 2901.22(B). Defendant was also found guilty of concealing a gun with purpose to impair its availability as evidence in an official proceeding or investigation that defendant knew was about to be instituted. R.C. 2921.12(A)(1).

{¶ 37} Defendant argues that her conviction is against the manifest weight of the evidence because the evidence is so conflicting that it is difficult to establish from this record how the shooting occurred. In that regard, defendant contends that the evidence establishes that at the time of this shooting, she was suffering from battered women's syndrome, that she feared Jeffrey Stephens would seriously injure or kill her, and that she shot Stephens in self-defense when he began beating her after she returned home from the K–9 Club.

{¶ 38} The evidence presented by the state demonstrates that on the night Stephens was shot, defendant had threatened violence against several people, including the three young women at the K–9 Club whom defendant accused of stealing her money, the bouncer at the K–9 Club whom defendant

threatened to shoot, and Jacinta Stephens, the victim's sister, who was with defendant at the K–9 Club and whom defendant also accused of taking her money. Defendant threatened to go home and get her gun and then return to the K–9 Club and "shoot this m * * * f * * * up." The state's evidence, if believed, permits an inference that defendant did go home, where she immediately obtained a gun, and that when Jeffrey Stephens attempted to stop defendant from leaving with the gun, defendant shot Stephens in the chest, causing his death.

{¶ 39} The identity of the person who shot Stephens is not an issue in this case. Defendant acknowledged that she was the shooter and that her finger probably pulled the trigger. Furthermore, defendant's self-defense claim was not persuasive, particularly in light of what defendant's daughter, Tiffany Carr, who was home when defendant returned from the K–9 Club, told police.

{¶ 40} According to Detective Via, Carr said that when defendant came home, she immediately went upstairs to her bedroom and began going through her closet, looking for her gun. Defendant obviously was not being beaten at that time by Stephens, who remained downstairs. After defendant went back downstairs, Carr heard defendant tell Stephens not to touch her, and also heard Stephens ask defendant where his car keys were. Shortly thereafter, Carr heard two gunshots and saw defendant running down the alley.

{¶ 41} Contrary to defendant's claim that she suffered injuries from the beating that Stephens gave her right before the shooting, neither the police nor anyone else observed any injuries on defendant, and she made no complaints to the nurse at the Montgomery County jail about any injuries.

{¶ 42} The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to resolve. *DeHass.* The jury was free to believe all, part, or none of the testimony of each witness. *State v. Harriston* (1989), 63 Ohio App.3d 58, 577 N.E.2d 1144. The jury did not lose its way simply because it chose to believe the state's witnesses and reject defendant's self-defense claim. The testimony of the state's witnesses, if believed, is not contrary to defendant's guilt.

{¶ 43} Defendant also argues that her conviction for tampering with evidence is against the manifest weight of the evidence because she testified at trial that after the shooting, while trying to place the gun in her purse in a dark alley, she accidentally dropped it and couldn't see where it fell. However, defendant told Detective Darryl Smith that she "threw the gun away."

{¶ 44} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest

miscarriage of justice occurred. Defendant's convictions are not against the manifest weight of the evidence.

{¶ 45} Defendant's third assignment of error is overruled.

*FOURTH ASSIGNMENT OF ERROR*

{¶ 46} "Appellant was deprived of a fair trial and due process through prosecutorial misconduct."

*FIFTH ASSIGNMENT OF ERROR*

{¶ 47} "Appellant was deprived of due process, a fair trial, and her constitutionally guaranteed right to effective assistance of counsel through counsel's failure to object to prosecutorial misconduct."

*SIXTH ASSIGNMENT OF ERROR*

{¶ 48} "Appellant was deprived of due process, a fair trial, and her constitutionally guaranteed right to effective assistance of counsel through counsel's failure to investigate and prepare for trial."

*SEVENTH ASSIGNMENT OF ERROR*

{¶ 49} "The trial court erred in permitting the state to play a videotape that had not been provided to the defense for review and which resulted in unfair surprise."

{¶ 50} These assignments of error are interrelated and pertain to the same incident at trial. Accordingly, we will address them together.

{¶ 51} Defendant complains in her fourth and seventh assignments of error of prosecutorial misconduct and argues that the trial court erred and denied her a fair trial by permitting the state, during the rebuttal portion of its case, to play for the jury a videotape of the second interview that police conducted with defendant's daughter, Tiffany Carr, on June 13, 2005. Other than defendant, Carr was the only person in the home at the time of the shooting who testified at trial. The videotape of Carr's second police interview erodes the credibility of defendant's trial testimony.

{¶ 52} Defense counsel objected at trial to the videotape on the grounds of late disclosure and unfair surprise. Defense counsel argued that while they were aware of Carr's second interview with police and a supplemental police report concerning it, they were not aware of the existence of the videotape prior to trial, nor had they been provided a copy of it. The state responded that a letter was sent as part of the discovery correspondence to defense counsel advising of the existence of the videotape and offering to make a copy of the tape available. Defendant's trial counsel could not recall whether or not they had received the state's letter concerning the videotape, but acknowledged that they had inherited defendant's representation from an attorney who had left their office and could

not say what may have transpired before they took over the case. The trial court overruled defendant's objection and permitted the videotape to be played for the jury.

{¶ 53} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones* (2000), 90 Ohio St.3d 403, 420, 739 N.E.2d 300, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

{¶ 54} Prosecutorial misconduct typically involves a prosecutor's statements and representations that create an animus against an accused and cause the jury to convict the defendant because of the animus instead of on the basis of the evidence admitted at trial. Mere errors or omissions don't rise to that level, particularly when a resulting abuse of discretion in failing to act on the alleged misconduct is chargeable to the trial court. The "misconduct" that defendant alleges is of that nature. We have cautioned defense counsel to avoid claims of prosecutorial misconduct absent evidence of a bad purpose on the part of a prosecuting attorney. *State v. McGonegal* (Nov. 2, 2001), Montgomery App. No. 18639, 2001 WL 1346024.

{¶ 55} The record in this case simply does not support defendant's assertion that the state failed to inform her about the existence of the videotape of Carr's interview prior to trial. Because no discovery violation resulting in unfair surprise is demonstrated on these facts, the trial court did not abuse its discretion or violate defendant's right to a fair trial by allowing the Carr videotape to be played for the jury.

{¶ 56} In her fifth and sixth assignments of error, defendant complains that she was deprived of her right to effective assistance of counsel as a result of (1) her counsel's failure to object to the prosecutor's misconduct in failing to timely disclose the existence of the Carr videotape and (2) her counsel's failure to properly investigate the case and prepare for trial.

{¶ 57} Defense counsel objected to the introduction of the videotape of Carr's police interview, arguing a discovery violation. The court overruled the objection.

Defense counsel did not allege prosecutorial misconduct. Finding no basis to make that claim, we cannot find that counsel violated his duty to defendant because they failed to make that argument.

{¶ 58} Defendant's conclusory statement that without seeing the Carr videotape, her attorneys were in no position to evaluate the advisability of using a battered-woman defense, to have defendant testify at trial, or to call Tiffany Carr as a defense witness is sheer speculation. Therefore, defendant has not demonstrated a reasonable probability that the outcome of her trial would have been different but for the evidence of the Carr videotape and her counsel's failure to view the video before trial. Ineffective assistance of counsel has not been demonstrated.

{¶ 59} Defendant's fourth, fifth, sixth, and seventh assignments of error are overruled.

*EIGHTH ASSIGNMENT OF ERROR*

{¶ 60} "The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."

{¶ 61} Defendant argues that the cumulative effect of the errors occurring during the trial deprived her of a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256. Having found no prejudicial error in the trial court's proceedings, however, there can be no "cumulative effect." *State v. Blankenship* (1995), 102 Ohio App.3d 534, 657 N.E.2d 559.

{¶ 62} Defendant's eighth assignment of error is overruled. The judgment of the trial court will be affirmed.

Judgment affirmed.

WOLFF, P.J., and FAIN, J., concur.