OPINION
{¶ 1} Rory Walker was found guilty by a jury of Tampering with Evidence and Possession of Cocaine. He was sentenced to concurrent terms of three and one years imprisonment. On appeal, Walker advances two assignments of error.
 {¶ 2} Appellant's first assignment of error states:
 {¶ 3} "THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO A FAIR JURY *Page 2 
TRIAL WAS VIOLATED BECAUSE THE JURY VENIRE DID NOT REPRESENT A FAIR CROSS-SECTION OF THE COMMUNITY."
 {¶ 4} The State concedes that Walker has set out the correct three-part test for determination of whether jury selection violates the requirements of the Sixth and Fourteenth Amendments that a petit jury be a fair representative cross-section of the community, as stated inState v. Fulton (1991), 57 Ohio St.3d 120, 123, citing Duren v.Missouri (1979), 439 U.S. 357, 364:
 {¶ 5} "In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." Fulton, 57 Ohio St.3d at paragraph two of syllabus.
 {¶ 6} Walker claims the trial court failed to try his challenge to the array of petit jurors. The State responds that Walker's challenge was untimely, and that the record fails to support his claim that the three-tier test has been met.
 {¶ 7} The record before us discloses the following. The number of prospective jurors who appeared exceeded nineteen, although the record does not disclose how many more appeared. There were five no-shows. The first time Walker challenged the array was after the court and counsel questioned the prospective jurors and the court asked counsel about challenges for cause: *Page 3 
 {¶ 8} "THE COURT: All right. As to all 18 potential jurors that have been questioned, anybody the State wishes to raise a challenge for cause.
 {¶ 9} "MR. DRISCOLL [prosecutor]: No, Your Honor.
 {¶ 10} "THE COURT: Defense wish to raise a challenge for cause?
 {¶ 11} "MR. NOWICKI [defense counsel]: Your Honor, except I would like to put on the record my challenge to the jury pool. I believe it doesn't adequately represent any minorities. I believe there's only one black woman and she's actually nowhere seated in the 18 possible selections, so I would just like to make a note of that on the record.
 {¶ 12} "THE COURT: Your challenge is noted. These jurors were selected pursuant to the standard protocol of the Court. Registered voters were placed into the computer system. The computer system was given two numbers between 1 and 10 to select the number of jurors needed in the jury pool needed for this year. The selection was random. All jurors that were excused from this particular list, there's been a record made of the purpose for their excuse or reassignment; and all that information is available through the jury coordinator. The Court has nothing before it to indicate there's been an improper selection of this venire panel."
 {¶ 13} Crim. R. 24(F) requires that a challenge to the array of petit jurors on the ground that it was not selected, drawn or summoned in accordance with law shall be made before the examination of the jurors. This clearly was not done although Walker was in the same position to assess the array before the prospective jurors were questioned as after.
 {¶ 14} Because Walker's challenge was untimely, the first assignment is *Page 4 
overruled.
 {¶ 15} Appellant's second assignment of error states:
 {¶ 16} "THE TRIAL COURT ERRONEOUSLY REQUIRED OPENING STATEMENTS TO BE GIVEN DURING VOIR DIRE WHICH WAS PREJUDICIAL TO THE DEFENDANT."
 {¶ 17} Walker contends that the trial court abused its discretion in exceeding the scope of Crim. R. 24(A), which authorizes the trial court to "give jurors a brief introduction to the case," by requiring counsel to give their opening statements before questioning the prospective jurors.
 {¶ 18} Walker argues in support of this assignment as follows:
 {¶ 19} "Requiring counsel to give its opening statements during voir dire caused prejudice and prevented inquiry by the defendant. In the case at bar, counsel was not given the opportunity to ask any questions of the potential jurors prior to given [sic] their opening statements. The case being tried was a drug related offense. The procedure that the Court used forced the defense to give its opening to the prospective jurors without discussing any potential biases. Which means if a jurors [sic] felt very strongly about drugs or drug related cases, the defense couldn't explore that until after the juror knew exactly what the case was about.
 {¶ 20} "Although the rules provide the opportunity for the court to give a brief introduction, an opening statement is much more than that. It is the foundation by which counsel builds it [sic] case. And by forcing an opening statement prior to any questioning regarding biases, results in the strong possibility of laying the foundation on tainted soil. A juror after hearing the opening statement, may have convinced him or *Page 5 
herself of the verdict based on what was said without an understanding of the underlying legal standard by which to consider it. Furthermore, a juror could feel so strongly against drugs that they could want to remain on the jury to insure the defendant was convicted. Without giving counsel the opportunity to provide and engage in their own questioning, any of the previous scenarios could have played out.
 {¶ 21} "The Trial Court's requirement was not reasonable. A brief overview of the case could have been given without requiring opening statements. Also if the Court had given this statement, counsel would have been in a better position to judge the potential jurors reactions. Because the Court abused its discretion and acted unreasonably and its actions were likely to cause bias or prejudice it was erroneous in requiring proceedings to occur in the manner they did." (Emphasis ours.)
 {¶ 22} The trial court explained to the prospective jurors why it altered the customary sequence of voir dire questioning and opening statements:
 {¶ 23} "At this time, I'm going to have the attorneys give their opening statements. Now, if you've sat on a trial before, you may recall that the opening statements were given to you after the jury was selected. Everybody else went home. And I did that for years. I find if I have them give the opening statements before the questions are asked, perhaps the questions may make some more sense. They may have a little different context; and then when you are asked if you can be fair and impartial in judging this case, based on the nature of the case, you will have a little more information when answering that question."
 {¶ 24} By its terms, Walker's argument is speculative at best. It may be that if this argument had been advanced at the trial level, the trial court might have reverted to the *Page 6 
customary procedural sequence but these arguments were not advanced. Indeed, there was no objection whatsoever to the procedure. Thus, we are confined to plain error analysis and upon complete review of the entire record, we cannot say that had the trial court not required opening statements before voir dire questioning, Walker clearly would have been acquitted.
 {¶ 25} On this record, we would be hard pressed to find an abuse of discretion. State v. Jenkins (1984), 15 Ohio St.3d 164, 215; State v.Bayless (1976), 48 Ohio St.2d 73. We certainly cannot find plain error
 {¶ 26} The second assignment of error is overruled.
 {¶ 27} The judgment will be affirmed.
DONOVAN, P.J., and GRADY, J., concur.
(Hon. William H. Wolff, Jr., retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Amy M. Smith Barbara J. Doseck Hon. Richard J. O'Neill *Page 1