[Cite as *State v. Dale*, 2013-Ohio-2229.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                                   :

     Plaintiff-Appellee                      :                    C.A. CASE NO.   2012 CA 20

v.                                              :                    T.C. NO.   12CR22

SEAN D. DALE                                    :                    (Criminal appeal from
                                                                     Common Pleas Court)

     Defendant-Appellant                     :

                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    31st    day of    May   , 2013.

. . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. No. 0069198, Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Blvd., Springboro, Ohio 45066
     Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

     **{¶ 1}**  Sean D. Dale was found guilty by a jury in the Champaign County

Court of Common Pleas of one count of felonious assault, one count of using a weapon while intoxicated, and one count of possession of marijuana. He was sentenced to an aggregate term of two years in prison and was ordered to pay restitution in the amount of $2,371. Dale appeals from his convictions.

{¶ 2} For the following reasons, the judgment of the trial court will be reversed and remanded as to felonious assault and affirmed as to using a weapon while intoxicated and possession of marijuana. The sentence for possession of marijuana will be vacated, and that count will be remanded for resentencing.

{¶ 3} The State's evidence established that, in the early morning hours of December 28, 2011, at Dale's home, Dale shot his friend and coworker, Jason Lockwood, two times with a semiautomatic handgun. Dale was under the influence of alcohol and marijuana at the time of the shooting, and when the sheriff's deputies responded to the scene, they found marijuana in Dale's sweatshirt pocket.

{¶ 4} Lockwood and his girlfriend had gone to Dale's house, at Dale's invitation, at approximately 10:00 p.m. on December 27, for drinking and card playing. Both men were also smoking marijuana, which was provided by Dale. Lockwood and his girlfriend's bickering annoyed others at the house during the evening; Lockwood's girlfriend left the house more than once, walking away on the country road in the dark; Lockwood would bring her back because he was concerned for her safety, and the arguing would continue. Dale and others in the house lost patience with this dynamic and began to argue about Lockwood's repeated attempts to bring the girlfriend back to the house.

{¶ 5} According to Lockwood, he and Dale exchanged words but had not had any

physical altercation when Dale suddenly pointed a gun at him. Lockwood had not seen Dale retrieve the gun and did not know from where it came. Lockwood said he was gathering up his phone and cigarettes to leave when Dale shot him in the leg. Lockwood approached Dale to try to get the gun away from Dale, and Dale shot Lockwood a second time in the other leg or hip. Lockwood exited to the porch and drove to a nearby relative's house.

{¶ 6} Dale called 911 to report the shooting. When sheriff's deputies responded to the scene, Dale admitted that he had been drinking beer and smoking marijuana, and the deputies found marijuana in his sweatshirt. The deputies later located Lockwood at the relative's house and took him to a hospital for treatment.

{¶ 7} Dale presented a different version of events. Dale claimed that the altercation began over a pack of cigarettes, and then Lockwood "snapped," slammed Dale to the kitchen floor, and got on top of him. Dale freed himself and was trying to get away from Lockwood when he (Dale) ran upstairs to retrieve a gun. Lockwood followed Dale up the steps. Dale ordered Lockwood out of the house, as he had already done several times, and pointed the gun at Lockwood. In response, Lockwood went back down the stairs; Dale followed a short time later, believing that Lockwood had left, but, in fact, Lockwood was in the kitchen, near an exterior door. Dale stood by the kitchen sink, and he loaded the gun because he felt threatened by Lockwood. Dale pointed the gun at Lockwood's chest, then lowered it and shot Lockwood in the leg. Lockwood lunged at Dale, attempting to grab the gun, and Dale shot him again.

{¶ 8} Dale claimed that he fired at Lockwood in self-defense. Dale testified that

he feared for his life because of how Lockwood was acting and the "crazed" look in his eyes. Lockwood had previously told Dale of another incident a few months earlier in which Lockwood had hit a man in the head with a beer bottle; Dale and Lockwood had discussed that incident again the night of the shooting. Dale's recollection of this story caused him to fear Lockwood, because there were beer bottles on the table in Dale's kitchen.

{¶ 9} Dale was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(2), one count of using a weapon while intoxicated, in violation of R.C. 2923.15(A)(B), and one count of possession of marijuana, in violation of R.C. 2925.11(A)(C)(3)(a). In March 2012, Dale was tried by a jury and was found guilty on all three counts. He was sentenced to two years for felonious assault and to five months each on the other charges, to be served concurrently; he was also fined $500 on each count.

{¶ 10} Dale appeals from his conviction, raising three assignments of error.

{¶ 11} Although not raised by the parties, we recognize that Dale's sentence for possession of marijuana was unauthorized by law. This offense was a minor misdemeanor and was identified as such in the indictment and final judgment. The maximum sentence for a minor misdemeanor is a fine of $150. Crim.R. 4.1(B); R.C. 2928(A)(2)(v). Dale was sentenced to five-months in jail and was fined $500. Imposing a sentence that is unauthorized by law results in an unlawful and void sentence. *State v. Barajas-Larios*, 178 Ohio App.3d 613, 2008-Ohio-5460, 899 N.E.2d 212, ¶ 18 (2d Dist.). Accordingly, we must vacate Dale's sentence for possession of marijuana and remand this count for resentencing.

{¶ 12} Turning to Dale's assignments of error, the second and third assignments of error state:

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE LAW OF SELF-DEFENSE.

APPELLANT WAS DENIED HIS CONSTITUTIONALLY GUARANTEED RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE TRIAL COURT'S INSTRUCTION ON SELF-DEFENSE AND ALLOWED THE MINOR MISDEMEANOR CHARGE TO BE TRIED TO THE JURY.

{¶ 13} Dale claims that the trial court erroneously instructed the jury with respect to his alleged duty to retreat before using deadly force in self-defense against Lockwood, and that counsel was ineffective in failing to object to the court's jury instructions on self-defense. Dale also contends that counsel was ineffective in allowing the charge for possession of marijuana, a minor misdemeanor, to be tried to the jury.

{¶ 14} With respect to self-defense, Ohio law provides:

Physical force may be used in self-defense, subject to two qualifications. First, the defendant cannot have been at fault in creating the situation that gave rise to the danger against which he used force to protect himself. Second, the defendant must have had reasonable grounds to believe, and an honest belief, that such force as was used was necessary to protect himself. That second justification differs in its application depending on the nature of the force used, whether it was deadly or nondeadly.

*State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-Ohio-6541, ¶ 18.

{¶ 15} "Deadly force" is defined as any force that carries a substantial risk that it

will proximately result in the death of any person. R.C. 2901.01(A)(2). The use of a gun constitutes the use of deadly force. *State v. Nelson*, 5th Dist. Stark No. 7437, 1988 WL 73499, * 4 (July 11, 1988). Deadly force may be used as a defense against a danger of death or great bodily harm, but, when deadly force is used, the defendant, in addition to the other requirements for self-defense, must not have violated any duty to retreat in order to protect himself from that danger. *Kucharski* at ¶ 19, citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979). To prove that the duty to retreat was not violated when deadly force was used, the defendant must show that no means of retreat or avoidance was available to him and that his only means of escape or avoidance was the deadly force he used. *Id.* at ¶ 20, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978). Implicit in the retreat requirement is a value judgment that retreat is preferred to a loss of life resulting from the use of deadly force. *Id.* at ¶ 19.

{¶ 16} The duty to retreat does not apply when one is attacked in one's home. *Id.* at ¶ 20, citing *State v. Jackson*, 22 Ohio St.3d 281, 490 N.E.2d 893 (1986). R.C. 2901.09(B), also known as the "castle doctrine," creates an exception to the general duty to retreat, and it states in pertinent part that a person who is in his or her own home "has no duty to retreat before using force in self-defense * * *."

{¶ 17} Similarly, R.C. 2901.05(B)(1) provides that a defendant is entitled to a presumption of self-defense if the evidence shows that the defendant used defensive force against another person who was "in the process of unlawfully and without privilege to do so entering, or ha[d] unlawfully and without privilege to do so entered" the defendant's residence. This is a rebuttable presumption and may be rebutted by a preponderance of the

evidence that the victim had a right to be in the residence or the defendant was unlawfully in the residence. R.C. 2901.05(B)(2) and (3); *State v. Lewis*, 8th Dist. Cuyahoga No. 97211, 2012-Ohio-3684, ¶ 13; *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 57.

{¶ 18} "The difference between the Castle Doctrine and the rebuttable presumption of self-defense lies in the legal status of the victim." *Lewis* at ¶ 18. If the victim were lawfully in a residence at the time the defendant used deadly force against him or her, the defendant would not be entitled to the presumption of self-defense. *Id.* at ¶ 19; R.C. 2901.05(B)(1)-(2). However, the defendant would be entitled to a castle doctrine instruction (that he had no duty to retreat from the residence) if he were lawfully occupying the residence at the time he used the force. *Id.* It would then still be the defendant's burden to prove the remaining elements of self-defense by a preponderance of the evidence. *See State v. Westfall*, 9th Dist. Lorain No. 10CA009825, 2011-Ohio-5011, ¶ 19, quoting *State v. Little*, 9th Dist. Lorain No. 10CA009758, 2011-Ohio-768, ¶ 23; *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 16.

{¶ 19} At Dale's trial, the court gave the following jury instructions related to self-defense.

> * * * The defendant claimed to have acted in self-defense. To establish a claim of self-defense, the defendant must prove by a greater weight of the evidence that he was not at fault in creating the situation giving rise to the shooting incident; and he had reasonable grounds to believe that [sic] an honest belief, even if mistaken, that he was in imminent danger of

death or great bodily harm; and that his only reasonable means of retreat or withdraw from such danger was by the use of deadly force; and he had not violated any duty to retreat or withdraw to avoid the danger.

Duty to retreat. The defendant had a duty to retreat if he was at fault in creating the situation giving rise to the shooting incident or did not have reasonable grounds to believe and an honest belief that he was [in] imminent danger of death or great bodily harm or that he had a reasonable means of escape from that danger or other than by the use of deadly force.

No duty to retreat. The defendant no longer had a duty to retreat if he retreated or withdrew from the situation or reasonably indicated his intention to retreat or withdraw from the situation and no longer participated in it; and he then had reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm and the only reasonable means of escape from that danger was by the use of deadly force, even though he was mistaken as to the existence of that danger.

* * *

Self defense, in deciding whether the defendant had reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm, you must put yourself in the position of the defendant; with his characteristics, his knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him at the time.

You must consider the conduct of Jason L. Lockwood and decide whether his acts and words caused the defendant reasonabl[y] and honestly to believe that he was about to be killed or receive great bodily harm.

{¶ 20} Whether Dale, prior to either or both of the shootings, had reasonable grounds to believe and did in fact believe that he was in imminent danger of death or serious physical harm under the facts presented in this case was for the jury to determine. If the jury found such beliefs, it was then to consider whether Dale had violated any duty to retreat before using deadly force in self-defense. In its jury instructions, the trial court identified a single situation in which Dale would *not* have a duty to retreat: where, after retreating or withdrawing from the situation, or indicating an intention to do so, he still had reasonable grounds and an honest belief that he was in imminent danger of death or great bodily harm and that deadly force was the only reasonable means of escape from that danger. The trial court made no reference to the castle doctrine, whereby in certain circumstances a person is not required to retreat from or within his or her own home, and that doctrine would seem to apply in this case. The trial court erred in failing to instruct the jury about the existence of the castle doctrine as an exception to the duty to retreat.

{¶ 21} The facts in *Lewis,* 8th Dist. Cuyahoga No. 97211, 2012-Ohio-3684, are similar to the facts in Dale's case. In *Lewis*, the defendant and his girlfriend had spent the night at the defendant's home, drinking alcohol and smoking crack cocaine. In the morning, the defendant told his girlfriend to leave, but she refused, and an argument ensued. According to the defendant, the girlfriend retrieved a knife and swung it at him repeatedly, slashing his shoulder. In his struggle to disarm her, the couple fell to the floor, and the

girlfriend was fatally stabbed. The defendant was charged with murder and other offenses.

{¶ 22} At trial, the jury was instructed on the elements of self-defense. However, the trial court's instructions suggested that the defendant had had a duty to retreat if "he had a reasonable means of escape * * * other than by the use of deadly force," and no castle doctrine instruction was given. The court did instruct on the rebuttable presumption of self-defense if the evidence showed that the girlfriend was unlawfully in defendant's home when she was stabbed. *Id.* at ¶ 16-17.

{¶ 23} *Lewis* reversed the defendant's conviction, holding that the jury instructions had improperly focused on the girlfriend's legal status, that "this determination was fatal to defendant's case," and that the instruction went "against well-developed jurisprudence regarding the right to kill in self-defense" and the absence of a duty to retreat when one is attacked in one's own home. *Id*. at ¶ 20. The appellate court concluded that Lewis "did not receive a fair trial because the jury did not deliberate with a complete set of instructions." *Id*. at ¶ 23.

{¶ 24} The State contends that the castle doctrine "does not apply to situations (like Dale's) where a party of drunken friends dissolves into an all-out brawl, and subsequently the resident attacks a guest to forcibly remove him from the premises," citing *State v. Madera*, 8th Dist. Cuyahoga No. 93764, 2010-Ohio-4884. However, what the Eighth Appellate District actually stated was that it had "not seen [the castle doctrine] *applied successfully* in situations where a party of drunken friends dissolves into an all-out brawl." (Emphasis added.) *Id.* at ¶ 38.

{¶ 25} In fact, *Madera* does not discuss the castle doctrine's effect on a

homeowner's duty to retreat. The central dispute in that case was a factual one: whether the defendant had ever been lawfully in the house, or whether he had been a trespasser from the outset. The defendant had attacked a longtime-friend and "frequent guest" with a sword after the victim and the defendant had argued at the defendant's home. The defendant argued that a criminal trespass instruction should have been given to the jury, but the court of appeals held that the trial court's instruction on the castle doctrine sufficiently communicated to the jury that the person against whom force was used must not have been lawfully on the premises. The defendant in *Madera* also argued, inaccurately, that the castle doctrine creates a rebuttable presumption that the drunken friend involved in an altercation at a home was unlawfully present, but the appellate court did not discuss or adopt this view.

{¶ 26} Dale claims that trial counsel's failure to object to this error constituted ineffective assistance of counsel. We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*.

{¶ 27} Dale did not dispute that he shot Lockwood; his defense was that he acted in self-defense. To succeed on his claim of self-defense involving the use of deadly force, Dale was required to establish, among other things, that he did not violate any duty to retreat.

An instruction on the castle doctrine could have established a critical element of Dale's self-defense claim, and there was no strategic basis to omit such an instruction. Thus, counsel's conduct fell below an objective standard of reasonableness when he failed to object to the incomplete jury instruction.

{¶ 28} The precise reasons for the jury's verdict are unknown. Thus, we cannot find that the failure to instruct pursuant to R.C. 2901.09(B) is plain error; this would require a determination that "the outcome of the trial would *clearly* have been otherwise." (Emphasis added.) *State v. Lang*, 129 Ohio St.3d 5513, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108, citing *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶ 29} However, with respect to the assignment for ineffective assistance of counsel, a different analysis is appropriate. The jury may have been unpersuaded that Dale reasonably and honestly believed he was confronted with an imminent risk of death or serious harm. Lockwood was unarmed and, although beer bottles were present, no evidence was presented that Lockwood held one or attempted to grab one for use as a weapon. Notwithstanding the alleged incident several months earlier in which Lockwood had used a beer bottle as a weapon, the jury could have reasonably concluded that there was no evidence to establish such an intention under the facts of this case. The jury also could have concluded that the "crazed look" in Lockwood's eyes (as recounted by Dale), without more, did not justify the use of deadly force. If the jury reached either of these conclusions, it would not have reached the issue of Dale's duty to retreat, and the incomplete jury instruction would have been harmless. On the other hand, based on the instructions the jury was given, it may have concluded that Dale violated a duty to retreat before using deadly

force. Because we do not know the basis for the jury's verdict, we conclude that there was a reasonable probability that, but for the incomplete jury instruction, the outcome of the case would have been different, i.e., the jury might reasonably have found that Dale acted in self-defense. Thus, Dale's conviction for felonious assault will be reversed.

{¶ 30} Dale also contends that trial counsel was ineffective in allowing the count of possession of marijuana to be tried to the jury. He claims that the presentation of this evidence to the jury was prejudicial to him with respect to the more serious charges.

{¶ 31} We note that, because the possession offense was a minor misdemeanor, Dale did not have a right to a jury trial on that count. In this respect, the consolidation of the offenses for trial enabled Dale to have the matter determined by a jury, when he would not have otherwise had such a right. However, the count of possession could have simultaneously been tried to the court.

{¶ 32} Because our resolution of Dale's argument regarding the jury instructions will result in the reversal of his conviction for the count of felonious assault, Dale has suffered no prejudice with respect to that count. Dale's possession and/or use of marijuana was directly relevant to the count of using a weapon while intoxicated, and would have been admissible at a separate trial on that count. Accordingly, Dale suffered no prejudice as a result of counsel's alleged ineffectiveness in allowing the minor misdemeanor possession of marijuana to be heard by the jury, and he was not denied the effective assistance of counsel on this issue.

{¶ 33} The second assignment of error is sustained. The third assignment of error is sustained in part and overruled in part.

{¶ 34}   Dale's first assignment of error states:

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY WHEN THE TRIAL COURT ALLOWED ALL PROSPECTIVE JURORS TO HEAR DETAILED OPENING STATEMENTS BEFORE THE COMPLETION OF THE VOIR DIRE PROCESS AND THE SELECTION OF THE JURY.

{¶ 35}   Dale contends that the procedure employed by the trial court in this case, whereby the potential jurors heard the opening statements of the parties before jurors were actually seated, prejudiced him by "harden[ing]" their positions before biases were exposed, and deprived him of his right to an impartial jury.

{¶ 36}   After some preliminary comments, questions, and instructions by the court, the court explained the procedure it intended to follow:

Little over five years ago the Ohio Supreme Court and the state legislature came to the belief that some changes would be appropriate in the jury process. And this Court was one of the approximately 40 courts that volunteered to serve – pardon the very bad pun – on a trial basis to try out some of these suggested changes and to see how they would work with prospective jurors and with actual jurors. Once that process of testing ideas was complete, then legislation was passed that put into effect some of those changes. Before that – we are about to have an example of one of those changes – before those changes were made, opening statements were delivered after the jury was selected. So [the] only people that heard the

opening statement were the 12 jurors and the alternate. We believe that it's fair for all of you to hear the opening statements of the lawyers. You've taken your time to be here. We think you should know what kind of case you're being considered for even though you may not eventually serve on the jury.

Another reason for giving these opening statements is that it might help you be better prepared for questions that will be asked of you either individually or as a group during the jury selection process.

The court then instructed the jury that the opening statements were not evidence, but the lawyers' views of what the evidence will show.

{¶ 37} Both parties presented opening statements, and neither party objected on the record to this manner of proceeding with the jury selection. Dale makes no specific argument as to how the presentation of both parties' versions of events hardened the potential jurors as to a particular version or made it impossible to thereafter identify potential jurors' biases.

{¶ 38} We have previously addressed the issue of prejudice arising from a variation in the customary sequence of voir dire questioning and opening statements. *See State v. Walker*, 2d Dist. Clark No. 08-CA-32, 2009-Ohio-1936, ¶ 16-25. We found that a presumption of prejudice from such a manner of proceeding would be "speculative at best," particularly where, as here, the defendant failed to challenge the procedure in the trial court and, in so doing, deprived the trial court the opportunity to revert to the customary procedure. *Id.* at ¶ 24. On this record, as in *Walker*, there is no basis for us to conclude

that Dale was prejudiced by the manner in which the trial court handled voir dire.

{¶ 39}    The first assignment of error is overruled.

{¶ 40}    The judgment of the trial court will be reversed and remanded insofar as it convicted Dale of felonious assault, due to the incomplete jury instructions on that count and counsel's ineffectiveness in addressing that error.  The judgment of the trial court will be affirmed with respect to Dale's convictions for using a weapon while intoxicated and possession of marijuana, but his sentence on possession of marijuana will be vacated, and we will remand that count for resentencing.

. . . . . . . . . .

FAIN, P.J., concurs.

HALL, J., concurring:

{¶ 41}    I agree that it was not plain error to fail to instruct on the R.C. 2901.05(B) presumption that force used against an intruder in one's home is self-defense. But I hold that belief because that statute applies to force against intruders, not household guests. Therefore, on the facts of this case, the failure to instruct was not error, and therefore not plain error. I also agree that the trial court erred in instructing the jury on a duty to retreat without including the castle-doctrine exception now codified in R.C. 2901.09 (providing that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense"). Moreover, I conclude that the instruction given, O.J.I. 421.19, is wrong, inadequate, and the result of circular reasoning. As I will attempt to explain, however, the incorrect instruction given, if followed with precision, did not prejudice the defendant and, therefore, did not constitute plain error.  Furthermore, I agree that the trial court's

duty-to-retreat instruction, which was complicated by an instruction about how one can revive a right to self-defense after he has retreated, creates a reasonable probability of a different outcome with proper instructions, thereby establishing ineffective assistance of counsel under *Strickland v. Washington*. Finally, I agree that the misdemeanor marijuana sentence was improper, requiring a remand for resentencing.

{¶ 42}    The castle doctrine has been passed down from English common law. Almost a century ago, then Judge Cardozo wrote:

> * * * It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. More than 200 years ago it was [said] by Lord Chief Justice Hale (1 Hale's Pleas of the Crown, 486): In case a man "is assailed in his own house, he need not flee as far as he can, as in other cases of se defendendo, for he hath the protection of his house to excuse him from flying, as that would be to give up the protection of his house to his adversary by flight." Flight is for sanctuary and shelter, and shelter, if not sanctuary, is in the home.

*People v. Tomlins*, 213 N.Y. 240, 243, 107 N. E. 496, 497 (1914).

{¶ 43}    Ohio has two statutes on the subject. The first, R.C. 2901.09, codifies the doctrine itself. The second, R.C. 2901.05(B), creates a rebuttable presumption that use of force against one who is "in the process of unlawfully * * * entering, or has unlawfully * * * so entered" one's home (or vehicle) is presumed to have been in self defense (or defense of

another). In this case, the victim was a friend, co-worker, and invited guest to a party at the defendant's home. Therefore, the statutory presumption related to the castle doctrine does not apply. Because it does not apply, failure to give an instruction consistent with R.C. 2901.05(B) cannot be error.

{¶ 44} A more delicate question is whether the duty-to-retreat instruction given by the trial court amounts to plain error. Initially, applicability of the common-law lack of duty to retreat does not depend on whether force is used against an intruder, guest, or even a co-occupant. "There is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home." *State v. Thomas*, 77 Ohio St.3d 323, 673 N.E.2d 1339 (1997) at syllabus. If there is no duty to retreat from attack by a cohabitant, then there cannot be a duty to retreat from a person of lesser status in the home. Similarly, the castle-doctrine statute, R.C. 2901.09, which plainly states there is no duty to retreat from one's residence, is not limited to force against intruders. Nevertheless, the duty to retreat is not unlimited. Indeed, we have stated the following:

> A person who, through no fault of her own, is assaulted in her own home may stand her ground, meet force with force, and, if necessary, kill her assailant, without any duty to retreat. *Thomas*, 77 Ohio St.3d at 327, 673 N.E.2d 1339. However, if defendant was at fault in creating the situation that gave rise to the shooting of Jeffrey Stephens, then she had a duty to retreat even though the incident occurred inside her own home. *State v. Franklin*, Summit App. No. 22771, 2006-Ohio-4569, 2006 WL 2547959; *Thomas*.

*State v. Powell*, 176 Ohio App.3d 28, 2008-Ohio-1316, 889 N.E.2d 1047, ¶ 21 (2d Dist.).

**{¶ 45}** The duty to retreat ordinarily applies only when a defender is about to resort to deadly force. The logic is that it is better to escape or walk away from a confrontation than to kill an assailant. *State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-Ohio-6541, ¶19 ("Implicit in the retreat requirement is a value judgment that retreat is preferred to a loss of life resulting from the use of deadly force."). The standard jury instruction regarding a duty to retreat is found at O.J.I. 421.19. The trial court's instruction below mirrored that pattern instruction. But it is wrong. The three parts of the instruction are cumulative. A defendant must prove all three. For ease of discussion, I have shortened the elements. To prove self defense, a defendant first must prove (a) that he was not at fault and (b) that he reasonably believed he was in grave danger and deadly force was reasonable. So far, so good. The final part of the pattern instruction requires a defendant to prove (c) that he did not violate a duty to retreat. To find a duty to retreat, however, a jury must find either that a defendant was at fault or that he was unreasonable. But these inquiries involve determinations that a jury already will have made under (a) and (b) above. If a jury had found that a defendant was at fault or was unreasonable, he could not rely on self defense anyway. In that situation, the jury never would reach the duty-to-retreat issue. Conversely, if a jury found that a defendant was not at fault and was reasonable, it could not logically change its mind and reach a contrary conclusion on the duty-to-retreat issue. Thus, as the pattern instruction is worded, there *never* will be a duty to retreat. A jury's findings on parts (a) and (b) of the self-defense instruction will determine the applicability of the defense. The instruction regarding a duty to retreat is wrong and is the result of circular reasoning.

**{¶ 46}** The duty-to-retreat instruction should more clearly explain that a person cannot employ deadly force if he knows he can avoid such force by using a readily available,

completely safe means of retreat or escape.[1] Conversely, when in one's home, where there is no duty to retreat, O.J.I. 421.19(2)(B) should be modified to eliminate the language providing that the "only reasonable means of (retreat) (escape) (withdrawal) from such danger was by the use of deadly force." This language improperly implies that there is a duty to retreat in one's home.

{¶ 47} Because a logical analysis of the inaccurate O.J.I. duty-to-retreat instruction leads me to the inescapable conclusion that if self defense is applicable there is never a duty to retreat, the defendant was not prejudiced by the superfluous duty-to-retreat instruction. Without prejudice, I cannot say that the trial court's retreat instruction amounted to plain error.

{¶ 48} A different analysis is required, however, when considering the ineffective-assistance-of-counsel claim. There, if a reasonable probability of a different result is evident, then the conviction should be reversed. In this case, where there was no duty to retreat, the jury was exposed to the concept of a duty to retreat three times in the instructions. First, in the O.J.I. 421.19(2)(B) instruction, the trial court stated, "* * * and that his only means of retreat or withdraw (sic) from such danger was by the use of deadly force." As indicated, this suggests there was a duty to retreat. Second, the actual duty-to-retreat instruction was given. Third, the follow-up instruction was given about when a defendant, having once retreated, could revive the applicability of self defense. This unnecessarily and erroneously injected issues for the jury to consider which were not applicable. On balance, consistent with the result reached by my colleagues, I find a

---

[1] See, for example, Connecticut Criminal Jury Instructions § 2.8-3(A) "Duty to retreat § 53a-19 (b) (1)."

reasonable probability that the result would have been different if the jury properly had been instructed that the defendant had no duty to retreat in his home, thereby eliminating the duty to retreat instruction entirely. On this issue, I join in the reversal and would remand for further proceedings.

{¶ 49}　Finally, I agree that the misdemeanor possession of marijuana sentence must be vacated and that count should be remanded for resentencing.

. . . . . . . . . .

Copies mailed to:

Kevin S. Talebi
Marshall G. Lachman
Hon. Nick A. Selvaggio