[Cite as *State v. Williams*, 2014-Ohio-1015.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 MA 185 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DREON A. WILLIAMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 11 CR 760

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:     Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:     Atty. John J. Dixon
Huntington Bank Bldg.
26 Market Street, Suite 610
Youngstown, Ohio  44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  March 11, 2014

WAITE, J.

{¶1} Appellant, Dreon Williams, appeals his conviction and sentencing for murder, attempted murder, felonious assault, and tampering with evidence. The charges stem from an incident in Campbell, Ohio where Appellant and his brother, Dionte Robinson, allegedly shot two men and hid the weapons as they fled the scene. Appellant now challenges the sufficiency and weight of the evidence against him on each conviction and his consecutive maximum sentences; argues that the prosecution was inappropriately allowed to try him for the shootings after his brother's acquittal using an inconsistent theory of prosecution; and alleges that the trial court infringed on his Sixth Amendment right to confrontation by limiting his cross-examination of an informant. Based on this record before us, Appellant's six assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2} On August 6, 2010 at approximately 10:00 p.m., Anthony Harrison and Eric VanCobb were walking to VanCobb's house after spending time at the St. Lucy's festival. As the two neared the intersection of Tremble Ave. and Thirteenth St. in Campbell, VanCobb was distracted by his phone. VanCobb looked up to see Harrison, a little ahead of him, talking to two men. VanCobb saw the two men pull out guns. He turned and ran down Thirteenth St. When VanCobb turned to look behind him, he saw a man pointing a gun at him, heard a shot and felt pain in his leg. VanCobb looked back toward the intersection and heard additional shots. He saw

Harrison running away from the two men down Tremble Ave. The shooting continued, but VanCobb could no longer see Harrison.

{¶3} The bullet that hit VanCobb shattered and the fragments remain in his leg. Shots entered Harrison's body in the left side of his back, near the spinal column. The bullet traveled up through the body into the chest cavity and continued along the back side of his heart, between the heart and lung, tearing open his heart and perforating the upper portion of his left lung before exiting near the left shoulder. It is unclear whether a fragment of this bullet was recovered at the scene. Harrison died at the scene before the police arrived. According to the examining pathologist, his injuries were consistent with being shot in the back while running away from the shooter. The record reflects that seven spent shells consisting of both .38 and 9mm, one complete bullet, and a bullet fragment were recovered from the scene.

{¶4} VanCobb, who survived, did not give a statement at the scene and initially stated that his injury occurred when he was struck by a car. He was reluctant to testify at trial, but ultimately testified that the two men he and Harrison encountered at Tremble and Thirteenth were strangers to him. According to VanCobb, he could not identify the man who shot him not only because he had not seen him before, but because he was distracted by his phone immediately prior to the shooting.

{¶5} Ernest Rayford, a witness who knew not only Appellant and his brother, but also Anthony Harrison, observed the men arguing near the corner of Tremble and Thirteenth, but ran away when multiple shots were fired. He was able to identify

Appellant as one of the two men shooting. Rayford also testified that he saw the three men and VanCobb arguing at the St. Lucy festival prior to the shooting.

{¶6} Officer Joseph Pavlansky testified that at 10:23 p.m. he responded to a report that a pedestrian had been hit by a car near the intersection of Tremble and Thirteenth. When the officer arrived at the scene he found Harrison lying face down on Tremble Ave., unresponsive. The officer was unable to detect a pulse. A small group of people from the neighborhood were standing nearby and told him that they thought the man had been shot. The officer radioed for an ambulance and for Detective/Sergeant John Rusnak, who had been working security at the St. Rose festival that day. After calling for assistance, the officer's attention was drawn to a car stopped on Thirteenth St., just south of Tremble. The officer approached the car and saw a juvenile, clearly in pain, sitting with his legs hanging out of the car. The juvenile, who was later identified as VanCobb, told the officer that he had been hit by a car. The officer called for a second ambulance, but VanCobb left for the hospital in the car, rather than wait for the ambulance. Prior to leaving the scene VanCobb also encountered Detective Rusnak, who described him as uncooperative. VanCobb refused to give a statement.

{¶7} Three additional officers responded and began to establish an expanding perimeter around Harrison's body to look for evidence. Officer Pavlansky continued his search behind property at 91 Tremble Ave., where there was a path through a wooded area between the backyards of the adjoining street. The path led over to Bright Ave., to the former Croatian Hall. The officer found two loaded

handguns and two sweatshirts underneath the porch of the hall. The officer radioed the location of the weapons and waited until the weapons and shirts could be documented and bagged. The weapons were identified as a Hi-Point 9 millimeter pistol and a Lorcin model L-380 .380 caliber pistol.

**{¶8}** Detective Rusnak testified that he directed the investigation. No suspects were developed until February of the following year when DNA samples from the firearms matched a database sample for Appellant, Appellant's brother, and a third individual. Once the initial match was made, the detective requested a sample from Appellant. When initial matches are made in the database, the Ohio Bureau of Criminal Investigation ("BCI") requests a biological sample to confirm the match. Confirmation samples were also taken from Appellant's brother. Appellant complied with the request. The match to the DNA samples from the handle of the .38 was confirmed as to Appellant.

**{¶9}** The investigation continued into April of that year, when the detective met with Samuel Richards, who was Appellant's cellmate in the Mahoning County Jail. Richards was being held without bond at the time. Richards told the detective that Appellant described shooting both VanCobb and Harrison as part of a robbery gone wrong. Appellant told Richards that he and his brother had gone to the St. Lucy's festival looking for someone to rob and had fixed on Harrison and VanCobb. They confronted the two near the intersection of Tremble Ave. and Thirteenth St., and began shooting. Appellant took credit for both shootings, although he said both he and his brother fired, and described hiding the guns and discarding sweatshirts

under bushes as they ran away from the scene. Richards confirmed this information in his own testimony.

{¶10} Appellant was indicted on July 28, 2011 on one count of murder, in violation of R.C. 2903.02(A), one count of attempted murder, a first degree felony violation of R.C. 2903.02(A) and 2923.02(A), one count of felonious assault, a first degree felony violation of R.C. 2903.11(A)(2), three firearm specifications (one each for counts one, two and three) pursuant to R.C. 2941.145(A), and one count of tampering with evidence, a third degree felony violation of R.C. 2921.12(A)(1). Appellant was tried and found guilty on all counts on October 18, 2011. We note, here, that because Appellant and his brother were both identified as shooters during this incident, Appellant's brother was separately charged and tried on similar charges. Appellant's brother was acquitted.

{¶11} At the sentencing hearing on October 19, 2011, the trial court merged Appellant's felonious assault conviction with his attempted murder conviction. Appellant did not offer a mitigating statement or statements on his behalf. The trial court did not order the preparation of a pre-sentencing report. Harrison's sister spoke on behalf of the decedent; VanCobb declined to appear or speak. On October 25, 2011 the trial court entered consecutive sentences of fifteen years to life and ten years on counts one and two, murder and attempted murder. An additional three years to be served prior to and consecutive with each sentence was imposed for the firearm specifications included in each count. The court sentenced Appellant to two years of incarceration for tampering with evidence (original count four in the

indictment), to be served concurrently with his other sentences. Appellant received a total sentence of thirty-three years to life. After unsuccessful motions to set aside the verdict and for a new trial, filed October 21, 2011, Appellant filed a timely appeal.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED BY DENYING DEFENDANT-APPELLANT'S MOTION TO SET ASIDE THE JURY VERDICT AND TO ENTER A VERDICT OF AQUITTAL [SIC], OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL PURSUANT TO OHIO RULES OF CRIMINAL PROCEDURE 29(C).

{¶12} Appellant's first assignment of error addresses his motion for acquittal under Crim.R. 29, however, the substance of his argument addresses the weight and sufficiency of the evidence against him. Appellant asserts that the court must be well aware of the law pertaining to the sufficiency and manifest weight of the evidence, and so does not supply relevant authority for either standard. Appellant also does not address the standard of review appropriate when considering a trial court's decision to deny a post-verdict motion for acquittal or motion for new trial. Because Appellant's assignment of error addresses only the sufficiency and manifest weight of the evidence against him, and not the trial court's decision to deny his motion, our analysis of his assignment will likewise address the sufficiency and manifest weight of the evidence.

{¶13} In determining whether a criminal judgment is against the manifest weight of the evidence, this Court acts as a "thirteenth juror" to determine whether,

"the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The verdict is not against the weight of the evidence when there is evidence which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).

**{¶14}** "A verdict that is supported by sufficient evidence may still be against the manifest weight of the evidence. 'Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." ' (Emphasis sic.)" (Internal citations omitted.) *State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶24, quoting *Thompkins*, *supra*, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine, because the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77,

80, 461 N.E.2d 1273, 1276 (1984) and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶15}** Witness testimony and forensic evidence placed Appellant, his brother, and two firearms on the corner of Thirteenth St. and Tremble Ave. in Campbell, Ohio on August 6, 2010. A total of seven bullet casings were recovered from the scene in addition to bullet fragments and a whole bullet found near the body of one of the victims. Two firearms, a .38 and a 9mm, wrapped in sweatshirts and hidden under a porch, were recovered near the scene. Prior to DNA testing, forensic examiners were not able to conclusively establish which brother held which gun or which of the shots fired from either gun resulted in the death of Harrison and injury to VanCobb. The spent shell casings recovered indicate that both a .38 and a 9mm were fired at the scene. While the firearms examiner who examined the recovered casings and handguns could not conclusively state that the spent casings were from the weapons recovered, the casings were the corresponding caliber to each weapon, and had markings that were consistent with having been fired from each. The examiner stated that he could not positively link the casings to the recovered firearms because there were not enough unique markings to make a conclusive identification. The firearms examiner did swab the firearms for DNA trace evidence.

**{¶16}** The swabs taken from the firearms were sent to a DNA examiner, who processed all of the samples and was able to isolate multiple DNA profiles associated with each weapon. The examiner also processed the two sweatshirts that were found with the firearms. A DNA profile was recovered from one of the sweatshirts,

but DNA from too many sources was recovered from the second sweatshirt for a single profile to be conclusively established. When the examiner received a known sample from Appellant and compared it to the profiles associated with each weapon, Appellant's DNA was a match for samples recovered from the handle of the .38. While comparisons of Appellant's profile with samples taken from the trigger and magazine of the .38 were inconclusive, Appellant could not be excluded as the source of those samples, either. Appellant's DNA profile was not a match for samples from the 9mm pistol or the sweatshirt with an identifiable DNA profile. As to those items, Appellant's brother, Dionte Robinson, could not be excluded as the source of DNA traces. A third man, Sequan Clinkscale, also could not be excluded as the source of additional DNA traces on the trigger of the 9mm.

**{¶17}** In addition to forensic evidence, the state presented the testimony of multiple witnesses: VanCobb, who was shot in the leg fleeing from Appellant and his brother; Ernest Rayford, who had known the murder victim all his life and knew Appellant for several years; and Samuel Richards, who was held with Appellant prior to trial.

**{¶18}** According to VanCobb, he and Harrison were headed from the St. Lucy's festival when the two were approached by two unfamiliar men. He was texting on his phone and not paying close attention to what the two were saying to Harrison. Neither VanCobb nor Harrison were armed at the time.

**{¶19}** After seeing the men draw weapons, VanCobb turned and ran. After he was struck, VanCobb heard additional shots but could not remember how many.

Harrison ran down Tremble Ave., out of his view, and he did not see Harrison fall.  He testified that he telephoned his girlfriend who was able take him to the hospital.  According to VanCobb, the bullet shattered in his leg and the pieces are still inside his body.  Nothing in the record establishes which gun fired the bullet that shattered inside VanCobb's leg.

{¶20} Rayford testified that he saw Appellant and his brother arguing with VanCobb and Harrison at the St. Lucy festival.  Rayford then spent some time with Appellant and his brother before leaving to go to his girlfriend's sister's house.  While he was on the porch of the house, knocking on the door, he turned and saw Appellant, Appellant's brother, VanCobb, Harrison and possibly another man across the street.  He believed they were arguing.  When he turned to knock again, he heard three shots.  Rayford did not see who was firing.  In response to the gunfire he ducked and ran.  Initially he did not give a statement to police, but he stated that he felt guilty and later gave a statement at the prompting of his mother.  Rayford stated that he did not receive anything in exchange for his testimony, although he was incarcerated at the time he gave his statement.  He did testify that he received a reduced sentence prior to giving his statement, in part because it was his first offense.

{¶21} Richards met Appellant while both were being held in Mahoning County Jail.  Richards had been convicted of carrying a concealed weapon and possession of heroin, and was subsequently being held without bond on a parole violation.  Richards said he was not acquainted with any of the four men prior to meeting

Appellant in jail. Appellant told Richards that he and his brother were at a fair looking for someone to rob. According to Richards, Appellant said he found two victims. After he approached them, he shot them when they put their hands up. Appellant told Richards that he had a .38 and that his brother had a 9mm and that he shot one of the victims in the back and the second in the leg before he and his brother ran through a "cut," wrapped the two guns in their sweatshirts, and concealed them. (Tr. Vol. III, p. 450.) It was revealed during cross-examination that Richards, who was being held without bond, was nevertheless released the day after he gave his statement regarding Appellant.

{¶22} All the remaining testimony at trial was offered by the officers who responded to and investigated the shooting and the medical and forensic staff who examined and analyzed the victim and evidence collected at the scene. No witnesses testified on behalf of Appellant, whose defense consisted of challenging the credibility of the witnesses and attacking the laboratory conclusions. Appellant concedes in his brief that the "testimony of these witnesses is probably enough" to support Appellant's conviction for the murder of Anthony Harrison. (Appellant's Brf., p. 4.) Thus, he concedes the sufficiency of the evidence as to the murder conviction. Appellant then inexplicably contends that VanCobb, however, was injured by a shot from the 9mm handgun. (Appellant's Brf., p. 4.) No evidence in the record supports this second contention. However, ample material does appear in the record that, if believed, conclusively supports Appellant's convictions. The testimony of multiple witnesses places Appellant on the street with a weapon in his hand firing at both

Harrison and VanCobb. Forensic evidence links Appellant with the apparent murder weapon. The state presented probative evidence on each element of the offenses charged which, if believed, sufficiently supported conviction. Also, nothing in this record suggests that the jury lost its way when concluding that Appellant was guilty. While the evidence was by and large, circumstantial, the great weight of the evidence against him clearly supports conviction, as well. The trial court's ruling denying a motion for new trial was not an abuse of discretion where the verdict is supported by substantial evidence. Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE VERDICT OF GUILTY ON COUNT FOUR, TAMPERING WITH EVIDENCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶23}** Again, a conviction is not against the manifest weight of the evidence if "the inclination of the *greater amount of credible evidence*, offered in a trial" supports one side of the issue rather than the other. (Emphasis sic.) *Barnhart*, *supra*, at ¶24. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" *Id.* The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine, because the jury "is best able to view

the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.*, *supra*, at 80; *DeHass*, *supra*, at paragraph one of the syllabus.

**{¶24}** Pursuant to R.C. 2921.12(A)(1)(B): "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * Alter, destroy, conceal, or remove any record, document, or thing, with the purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2901.22(B) states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Under R.C. 2901.22(A): "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Various Ohio appellate courts have found that it is unnecessary for an offender to have actual notice of an impending investigation, because when the offender "commits an unmistakable crime, the offender has constructive knowledge of an impending investigation of the crime committed." *State v. Brodbeck*, 10th Dist. No. 08AP-134, 2008-Ohio-6961, ¶51 citing *State v. Schmitz*, 10th Dist. No. 05AP-200, 2005-Ohio-6617, ¶17; *State v. Barnes*, 6th Dist. No. WD-07-024, 2008-Ohio-1854; *State v. Kovacik*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, 969 N.E.2d 322; *State v. Nyugen,* 4th Dist. 12CA-14, 2013-Ohio-3170.

Convictions under this section have been upheld simply when a defendant told the investigating detective she "threw the gun away" after the shooting. *State v. Powell*, 176 Ohio App. 3d 28, 39, 2008-Ohio-1316, 889 N.E.2d 1047, 1055 (2nd Dist.).

{¶25} At trial, the officer who recovered the weapons testified that he found them under the back porch of the Croatian Hall on Bright Ave. after the perimeter of the search was extended. The officer testified that the weapons were concealed by the sweatshirts and by some leaf debris; additional testimony also suggests that there were bushes around the porch. Richards testified that Appellant told him he hid the weapons in sweatshirts under some bushes as he ran away after shooting two men. Under these circumstances, and applying the language of R.C. 2901.22(A) and (B), there was testimony in the record which, if believed, supports the conclusion that Appellant knew that a criminal investigation into the shooting and killing would commence and that he placed the guns under the porch in the bushes with the purpose of preventing discovery, thus impairing the investigation. The record may suggest that the trial court felt the tampering with evidence charge was redundant. The record clearly does not suggest that the charge was against the weight of the evidence. The fact that the weapons and sweatshirts were hidden while fleeing the scene of a crime, the basis of the charge, is not in dispute. Nothing in this record suggests that Appellant's conviction for tampering with evidence is against the manifest weight of the evidence. Appellant's second assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT TO CONSECUTIVE SENTENCES ON COUNTS ONE, TWO AND THREE OF THE INDICTMENT.

**{¶26}** Appellant was sentenced to consecutive terms for convictions on two of the four counts in the indictment: count one, the murder of Anthony Harrison; count two, the attempted murder of Eric VanCobb. Appellant's sentence on count four, tampering with evidence, runs concurrently with his sentences on counts one and two. No sentence was imposed for count three, felonious assault, which the trial court merged with Appellant's attempted murder conviction at the request of the state and by the agreement of all parties. (Sentencing Tr., p. 4.) The trial court sentenced Appellant to fifteen years to life on count one (murder); ten years on count two (attempted murder); and two years for count four (tampering with evidence). The court noted that Appellant had an extensive juvenile record and expressed the opinion that prior sanctions had failed to curb Appellant's criminal behavior. The court indicated that it had considered the principles and purposes of sentencing, the seriousness of the offenses, possibility of recidivism, the propriety of concurrent sentences, and made R.C. 2929.14(C)(4) findings prior to reaching this decision. (Sentencing Tr., pp. 20-27.) The court imposed the maximum allowable sentences under the law applicable at the time of sentencing for counts one and two, the murder and attempted murder charges, and a less than maximum sentence for the tampering with evidence charge.

**{¶27}** Upon review, an Ohio appellate court "must apply a two-step approach":

> First [the court] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse of discretion standard.

*State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶4. On appeal, Appellant concedes that his sentences are within the permissible range for each offense. Appellant also acknowledges that the trial court has authority, within the bounds of discretion, to impose consecutive sentences. The record of the sentencing hearing explicitly reflects the trial court's consideration of applicable sentencing statutes concerning sentencing principles and purposes and the identification of the correct sentencing law applicable at the time of the offense. H.B. 86 took effect in September 30, 2011, and has been applicable to all defendants at sentencing from that date. Neither party disputes, here, the fact that the trial court applied the amended version of R.C. 2929.14 which was current at the time of sentencing in this matter. Because the parties do not question the applicable version of R.C. 2929.14, no analysis of H.B. 86 is necessary. The sentence imposed on Appellant fell within applicable sentencing ranges and was therefore not clearly and convincingly contrary to law. The remaining question is whether the sentence amounted to an abuse of discretion.

**{¶28}** "Abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). The trial court in this instance, like the trial court in *Kalish*, "gave careful and substantial deliberation to the relevant statutory considerations." *Kalish, supra*, ¶20. The trial court also considered Appellant's prior record and the fact that Appellant shot two men who were running away from him in different directions. The court emphasized that the murder of Anthony Harrison was a "cold-blooded" killing of a "truly innocent victim, gunned down in the streets for no reason, no justification, no nothing" by Appellant who "shows no remorse." (Sentencing Tr., p. 23.) The court also indicated that, regardless of the fact that VanCobb was wounded in the leg, discharging a firearm at the back of an individual running away "is an attempt to cause them to die, especially under the circumstances of this case." (Sentencing Tr., pp. 24-25.) Appellant, however, contends that the imposition of consecutive sentences in this instance was intended to penalize Appellant for going to trial. In support of his argument, Appellant cites the trial court's statements concerning the severity of the offense and danger of recidivism that the court is charged by statute to consider and attempts to suggest that the court was being vengeful. (Appellant's Brf., p. 9.)

**{¶29}** A trial court is required by the legislature to consider the "overriding purposes of felony sentencing" which are:

(A) * * * [T]o protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

R.C. 2929.11. In addition to the purposes of felony sentencing, the trial court is also required to consider specific factors relevant to the purpose of sentencing, which include:

(A) * * *In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism,* * *

[and] any other factors that are relevant to achieving those purposes and principles of sentencing.

* * *

(B)(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

* * *

(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

* * *

(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

* * *

(5) The offender shows no genuine remorse for the offense.

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3)  Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

(4)  The offense was committed under circumstances not likely to recur.

(5)  The offender shows genuine remorse for the offense.

R.C. 2929.12.  The statements Appellant identifies in his brief as evidence that the trial court "imposed a trial tax on Appellant and sentenced him for the court's own subjective reasons" are actually explicit references to the seriousness and risk of recidivism factors and reflect the complete absence of mitigating factors as to the crimes committed by Appellant.  (Appellant's Brf., p. 11.)

**{¶30}** Appellant was found guilty of the unprovoked murder and attempted murder of two unarmed young men who were fleeing confrontation.  According to the court, Appellant is a repeat offender for whom prior sanctions have not served as a deterrence.  Appellant's offenses include the use of a firearm to exert deadly force, resulting in the death of one victim and caused grievous physical harm to the other. Nothing in this record suggests that the trial court failed to properly consider statutory factors or abused its discretion when deciding to impose maximum consecutive sentences in this matter.

**{¶31}** Appellant's belief that these facts are analogous to the conclusions reached by a plurality of the Eighth District Court of Appeals in *State v. Moore*, 8th Dist. No. 02 CA 216, 2005-Ohio-3311 is wholly mistaken.  Even if the cases were factually similar, and they are not, the decision of a sister district does not control the outcome in this instance.  In *Moore*, which does not address the presence or

absence of a sentencing report as Appellant suggests, a plurality of the Eighth District concluded that the sentence imposed on a co-defendant who elected to proceed to trial rather than enter a plea to kidnapping and attempted robbery charges was excessive under the circumstances. The relevant fact in *Moore* was the lack of deadly force; although a firearm was employed to facilitate the offenses, the defendant who entered a plea was the armed perpetrator, not the defendant who went to trial. In *Moore*, the shooter who pleaded guilty received a total sentence of nine years while the defendant who sought trial received thirty-three years. This is clearly not analogous to the matter at bar. Moreover, even if the facts were actually similar, it is not clear, under the law, that consecutive maximum sentences would be inappropriate in this case.

**{¶32}** Finally, Appellant's belief that the trial court's passing reference to his decision not to make a statement at sentencing is a violation of his Fifth Amendment right is misplaced. Appellant's opportunity at sentencing to make a statement concerning his remorse or to raise mitigating factors relevant to sentencing decisions is not sworn testimony. As it is not sworn testimony, and occurs only after trial has concluded and guilt has been established beyond a reasonable doubt, it does not carry a risk of self-incrimination. *State v. DePew*, 38 Ohio St.3d 275 (1988). Unsworn statements by a defendant made during the penalty phase of a prosecution do not implicate or infringe on the defendant's Fifth Amendment rights. *Id.*

**{¶33}** Nothing in this record supports a conclusion that the trial court's decision to impose maximum consecutive sentences on a repeat offender, who shot

two unarmed men in the back as they fled to avoid confrontation, was in any way an abuse of discretion. Appellant's third assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR THE GUN SPECIFICATIONS CONTAINED IN COUNTS ONE AND TWO OF THE INDICTMENT.

**{¶34}** Appellant contends that the trial court improperly sentenced him to serve three year terms for each of the firearm specifications attached to his convictions on counts one and two of the indictment. Appellant cites "R.C. 2929.14(D)(1)(b)" in support of his argument. Section (D) of R.C. 2929.14 does not include a part (b). The language on which Appellant relies actually appears in R.C. 2929.14(B)(1)(b), which provides:

> If a court imposes a prison term on an offender under division (B)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2967.19, section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

Part (B)(1)(a) of section 2929.14 specifies a mandatory three-year prison term for offenses defined by R.C. 2941.145 if the indictment or information "specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A). Appellant's July 26, 2011 indictment included the appropriate specifications as to both counts one and two, aggravated murder and attempted murder.

{¶35} The state construes Appellant's merger argument as an objection to the imposition of *two* firearm specifications, not to the imposition of *consecutive* sentences for the firearm specifications. As the state correctly notes, part (g) of R.C. 2929.14(B)(1) provides:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the

prison term specified under that division for any or all of the remaining specifications.

Under this section the trial court is required to impose the mandatory prison terms for both of Appellant's (B)(1)(a) firearm specifications because they were imposed due to underlying aggravated murder and attempted murder convictions.

{¶36} In the interests of clarity and completeness, we note that R.C.2929.14 (C)(1)(a) provides:

> Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony,* * * the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

Thus, under the applicable provisions of the Ohio Revised Code, the trial court was required to sentence appellant for both of the firearm specifications and to consecutively impose each specification sentence. R.C. 2929.14, (B)(1)(a), (B)(1)(g), and (C)(1)(a).

{¶37} Appellant's argument omits any reference to or discussion of these controlling statutes. Appellant ignores relevant existing law and contends, without support, that "legal analysis" would result in the merger of multiple crimes committed against multiple victims. Appellant claims that because one witness testified that there were two shooters, only one firearm specification should be imposed on Appellant. Appellant's argument is contrary to law and does not reflect the facts in this record. Appellant argues that because his brother was acquitted of the charges against him for his role in this incident, a manifest injustice as to Appellant has occurred. But Appellant's claim that he should be sentenced for only one of his two firearm specifications because he would have been responsible for only one of the two if his brother (who was separately tried for his role in this incident) had been convicted rather than acquitted, is wholly unsupported. Appellant was convicted on both counts. If anything, his brother's acquittal of these crimes and his own conviction tend to support the jury's decision, here. There was more evidence in this record linking Appellant to these crimes because of the DNA match to the apparent murder weapon and the testimony of the jailhouse informant. Regardless, the fact that his brother was separately tried for these crimes (and acquitted) is irrelevant to the trial court's duty to sentence Appellant for each of his convictions and specifications. Controlling law requires separate sentences for the specifications attaching to both of Appellant's serious felonies. R.C. 2929.14(B)(1)(g). Consecutive sentences are mandated on each of Appellant's specifications. R.C. 2929.14(C)(1)(a). Because, as the state notes, this issue is conclusively resolved by

relevant statutes, there is no further general merger analysis of the underlying facts necessary. Appellant's fourth assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 5</u>

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO BAR THE STATE FROM PRESENTING INCONSISTENT THEORIES OF PROSECUTION.

**{¶38}** Appellant contends that differing theories as to the motive underlying his convictions resulted in a due process violation. Certain witnesses testified that the two shooters and two victims argued over a woman. Other witnesses claimed the motive for the shooting was simple robbery. Appellant argues that the trial court's decision denying defense counsel's motion to require the state to choose only one theory of motive "effectively denies Defendant his right of due process." (Appellant's Brf., p. 13.) Appellant cites two federal circuit court cases and a law review article in support of his argument. Appellant's reliance on the sixth circuit's decision in *Stumpf v. Mitchell*, 367 F.3rd 594 (6th Cir.2004) is misplaced. *Stumpf* addressed the situation where multiple people have been convicted of a single crime through the use of contradictory evidence, not Appellant's situation, where there may have been different motives for a single defendant to commit a single crime.

**{¶39}** Appellant inexplicably sought at trial, and urges here, that the court must require the state to identify a single specific motive for the crimes Appellant was found guilty of committing. In support of his argument, Appellant refers to testimony from two witnesses: Richards, the jailhouse informant, who testified that Appellant

told him the killing occurred during a robbery, and Rayford, who testified that prior to the shooting he heard the group arguing over a girl. These may be inconsistent motives. They are not, however, the type of inconsistent theories of prosecution that the federal Fifth Circuit Court of Appeals found to be a due process violation in *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000) or the concern raised by the Sixth Circuit in *Stumpf, supra.*

{¶40} In *Groose*, the State of Missouri convicted two different defendants from two different groups of burglars of the same killing, on the strength of the contradictory statements of a single witness. The witness, who was present and involved in the burglaries that resulted in the death of the homeowners, gave two conflicting statements identifying two different killers. In separate trials, the state used both statements to convict two different people of killing the same victims. In the first statement, proposed killer A was in the house at the time of the murder. On the strength of this statement, proposed killer A was convicted of murder. In the second statement, proposed killer A did not enter the house until after the murder and another person was identified as the killer. This statement was used in a subsequent trial to convict proposed killer B of the same murder. The use of directly conflicting statements necessarily gave rise to due process concerns in *Groose* because the two conflicting statements were probative of the elements of the offense charged. As a result, the two conflicting convictions were obtained when, clearly, only one person could be guilty of the crime.

**{¶41}** In the instant matter, Appellant contends that the suggestion of multiple motives for the shooting similarly infringed on his due process rights. However, the testimony to which Appellant objects is not probative of the elements of Appellant's conviction. None of the concerns raised in *Groose* are present in this record. Quite simply, "[m]otive is not an element of the crime of murder and need not be established to warrant a conviction; proof of motive does not establish guilt nor does want of proof thereof establish innocence; and, where the guilt of the accused is shown beyond a reasonable doubt, it is immaterial what the motive may have been for the crime, or whether any motive is shown." *State v. Lancaster*, 167 Ohio St. 391, 149 N.E.2d 157, paragraph two of the syllabus. Crimes, like any other human action, may be (and very probably are) the result of multiple or mixed motives. Even in instances when motive is relevant, the state is not required to create and adhere to a single version of what may have transpired prior to and during the commission of a crime. *State v. Miller*, 96 Ohio St.3d 384, 389, 2002-Ohio-4931, ¶30 ("the prosecution is entitled to offer differing theories as to what actually transpired in the commission of an offense.") The testimony of the two witnesses, one saying he observed Appellant and his brother arguing with the men at the festival over a woman and the testimony of a second saying Appellant told him that he and his brother planned a robbery, is not inconsistent. The two witnesses are not providing conflicting versions of contemporaneous events, they are describing a sequence of events. Neither witness's testimony makes the other witness's improbable or

impossible. Quite simply, the testimony offered in Appellant's trial does not raise a due process concern with regard to the consistency of a theory of prosecution.

{¶42} Appellant next claims that the testimony of the jailhouse informant should not have been offered against Appellant, because it was not introduced in his brother's trial. The fact that the testimony of Richards, who was incarcerated with Appellant, was not offered in the trial of Appellant's brother does not have the significance Appellant ascribes. Testimony concerning an inculpatory statement made by Appellant to a third party outside the presence of his brother, who was also implicated, may be admissible against Appellant as a statement against interest. It would not, however, be admissible against his brother, who never endorsed the statement or made similar admissions. Evid.R. 802 and 804; *Bruton v. U.S.*, 391 U.S. 123, 125, 88 S.Ct. 1620 (1968) ("although Evans' confession was competent evidence against Evans it was inadmissible hearsay against [Evans' co-defendant] and therefore had to be disregarded in determining [the co-defendant's] guilt or innocence.") In *Bruton*, the use of Evans' confession also created a confrontation clause concerns because Evans did not testify, denying his co-conspirator the opportunity to cross-examine him with regard to inculpatory statements. Similarly, in order for Richards' statement to be used in Appellant's brother's trial, Appellant would have been required to testify against his brother, subject to cross-examination and without invoking his Fifth Amendment rights, to satisfy the requirements of the confrontation clause. The fact that a witness who had relevant testimony to offer that

was admissible against Appellant, alone, and testified only at Appellant's trial and not at his brother's, is neither surprising nor a due process concern.

**{¶43}** Because Appellant has not identified conflicting theories of prosecution but merely objects to testimony concerning multiple possible motives for the shooting and motive is not an element of murder or attempted murder; and because the record does not reflect any due process concerns created here, Appellant's fifth assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 6

THE TRIAL COURT ERRED IN DENYING APPELLANT'S RIGHT OF CONFRONTATION PURSUANT TO THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION BY MATERIALLY LIMITING THE CROSS-EXAMINATION OF THE STATE INFORMANT.

**{¶44}** The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Section 10, Article I of the Ohio Constitution provides that "the party accused shall be allowed * * * to meet the witnesses face to face * * *; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court." "The Confrontation Clauses were written into our Constitutions '*to secure for*

*the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' (Emphasis *sic.*)" *State v. Self*, 56 Ohio St.3d 73, 76-77, 564 N.E.2d 446 (1990), citing *5 Wigmore on Evidence 150, Section 1395* (1974).

**{¶45}** Appellant contends that the trial court denied him his right of confrontation when it sustained the state's objection to the following question: "Were you informed that the State was looking to send you to the penitentiary." (Tr. Vol. III, p. 456.) The record reflects that the trial court sustained the state's objection to the original wording of the question, and that the above reflects Appellant's counsel's attempt to reword the original question. While Appellant was stopped from asking his question as originally phrased, there was no objection to this question as it was reworded. (Tr. Vol. III, pp. 456-457.) However, in the confusion over discussion of the objection, counsel failed to pursue this question. Appellant claims that because he was stopped from this line of questioning, he was prevented from suggesting that Richards had received leniency in exchange for making a statement incriminating Appellant. However, the record shows that his counsel succeeded in making this point in his continuing cross-examination:

Q Would you please look at the exhibit one more time, Mr. Richards? Does it say that your next hearing date would be on April 26?

A Yes, Sir.

Q You were being held without bond until that day, correct?

A Yes, Sir.

Q Do you recall speaking to Det./Sgt. John Rusnak of the Campbell Police Department?

A Yes, Sir.

Q Okay. Was that on April 7?

* * *

A I'm not sure. They just called me to court. I'm not sure what day it was.

* * *

Q Is there a date on that document, Mr. Richards?

A Yes, Sir.

Q Is it April 8, 2011?

A Yes, Sir.

Q Would that be the day after you spoke to Detective Rusnak?

A I'm not sure because I don't remember which day I talked to him.

Q You're not sure if it was the same day or the day after, or what?

A  Not sure.

* * *

Q  So, you were being held without bond, and you're released the day after you speak to Detective Rusnak; is that correct?

A  I told you I wasn't sure it was the day I talked to the detective.

(Tr. Vol. III, pp. 457-459; 462.)   Previously, Detective Rusnak testified that he interviewed Richards in April of 2011.  While the witness may not have provided defense counsel with the precise statement he sought, the implication was clear enough to allow the jury to draw its own conclusion.  The testimony was sufficient to suggest that Richards was being held without bond prior to giving a statement against Appellant and released after giving his statement.

{¶46} Although Appellant professes that there is no evidentiary rule that would prevent the witness from responding to the question "[w]ere you informed that the State was looking to send you to the penitentiary," it is apparent that any response to the question would amount to hearsay.  Evid.R. 802.  The witness was not competent to testify regarding the state's intentions concerning his parole violations and the question was not phrased to elicit his subjective belief.  Appellant provides no legal basis in support of his belief that the witness should have been allowed to respond to the question.  The record does not support his contention that he was prevented from suggesting that Richards received leniency as a result of his statement.  The jury heard testimony that the witness was a convicted felon who was being held for a

second parole violation and was still on probation at the time of trial. The jury also heard testimony that the witness knew nothing of the case before he met Appellant and was not previously acquainted with Appellant. The jury was informed that Richards was being held without bond but released after giving a statement implicating Appellant. In sum, the jury heard sufficient testimony to allow it to evaluate the witness's possible motives to testify and his comparative lack of knowledge about Appellant's life and circumstances. Appellant's Sixth Amendment confrontation rights were not compromised or materially limited by the trial court's ruling. Appellant's sixth assignment of error is without merit and is overruled.

### Conclusion

**{¶47}** Appellant's three convictions were supported by sufficient evidence and are not against the manifest weight of the evidence. The state did not present inconsistent theories of prosecution or otherwise compromise Appellant's due process rights. The sentence ordered by the trial court was compliant with applicable law. Appellant's Sixth Amendment right to confrontation was not impaired by the trial court's ruling during cross-examination. Appellant's six assignments of error are overruled and the judgment of the trial court affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs in judgment only; see concurring in judgment only opinion.

DeGenaro, P.J., concurring in judgment only with concurring opinion.

**{¶48}** Consistent with my dissent in *State v. Hill,* 7th Dist. Mahoning No. 13MA1, 2014-Ohio-_____, post H.B. 86, the clearly and convincingly contrary to law standard of review should be applied to felony sentences pursuant to R.C. 2953.08(G)(2). *See also State v. White,* 1st Dist. No. C-4225, 2013-Ohio-4225, 997 N.E.2d 629, ¶5-10; *State v. Crawford*, 12th Dist. No. CA2012–12–088, 2013-Ohio-3315, ¶6; *State v. Venes*, 8th Dist. No. 2013-Ohio-1891, 992 N.E.2d 453, ¶10; *State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶7; *State v. Rodeffer*, 2d Dist. No. 25574, 2013-Ohio-5759, ¶29. Thus, I respectfully disagree with the majority's application of the *Kalish* standard of review, although I would affirm the sentence under the R.C. 2953.08(G)(2) standard.

**{¶49}** As the majority notes, H.B. 86 does apply to Appellant. However, I write separately to fully address Appellant's challenge to his consecutive sentence; specifically whether the trial court considered the provisions contained in R.C. 2929.14(C)(4) before imposing consecutive sentences.

**{¶50}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶51} More concisely stated, now "the trial court is required to make three findings before imposing consecutive sentences: 1) that consecutive sentences are necessary to protect the public from the future crime or to punish the offender; 2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) that one of the subsections (a), (b), or (c) apply." *State v. Farnsworth*, 7th Dist. No. 12 CO 10, 2013-Ohio-1275, ¶ 8, citing R.C. 2929.14(C)(4).

{¶52} "Thus, the court is once again required to make findings," however, "reasons are no longer required to support the findings." *State v. Power*, 7th Dist. No. 12 CO 14, 2013-Ohio-4254, ¶38, citing *State v. Galindo-Barjas*, 7th Dist. No. 12 MA 37, 2013-Ohio-43, ¶16–17, 19; *State v. Wilson*, 2d Dist. No. 24978, 2012–Ohio– 4756, ¶18 (court need not specifically identify the factual bases for its findings); *State v. Frasca*, 11th Dist. No. 2011–T–0108, 2012–Ohio–3746, ¶57 (reasons were required by former R.C. 2929.19(B)(2), which was not reenacted). Further "the trial court is not required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences, as long as it is 'clear from the record that the trial court engaged in the appropriate analysis.'" (Citations omitted.) *Power* at ¶40.

{¶53} A review of recent consecutive sentencing case law from this district is instructive. In *State v. Esmail*, 7th Dist. No. 11 CO 35, 2013-Ohio-2165, this court reversed the trial court's sentence for failing to make sufficient findings pursuant to R.C. 2929.14(C)(4), under the following scenario: the court stated in the sentencing entry that it considered "the purposes and principles of sentencing, and all other

relevant factors, (O.R.C. 2929.11 and 12)." *Id.* at ¶ 22. And then during the sentencing hearing the trial court, in addition to acknowledging the defendant's prior drug trafficking convictions and stating that based on the PSI, Esmail was not amenable to community control, said: "I do believe that this sentence today is consistent with the terms of Senate Bill 86. Again, the primary purposes of which are to protect the public and to punish the offender." *Esmail* at ¶ 21.

{¶54} This court held that the following findings were insufficient as a matter of law:

The trial court did find that Esmail's sentence was necessary to protect the public and to punish the offender, but this was the only one of the three findings required by R.C. 2929.14(C)(4) the trial court made before imposing consecutive sentences. The trial court did not find that the consecutive sentences are not disproportionate to the seriousness of Esmail's conduct and to the danger he poses to the public. And although the trial court noted Esmail's prior record, it did so in the context of community control; no finding was made with respect to consecutive sentences in light of Esmail's record. While the trial court did state that it believed the sentence was consistent with "Senate Bill 86." this was not enough to comply with R.C. 2929.14(C)(4). Although the trial court was not required to use the exact words of the statute, generally citing to H.B. 86 is not sufficient to show the court made the required statutory findings.

*Esmail* at ¶23.

{¶55} In *State v. Bellard*, 7th Dist. No. 12 MA 97, 2013-Ohio-2956, this court concluded that the trial court's findings in that case were even less comprehensive than the findings in *Esmail* and accordingly reversed. In *Bellard*, the trial court made only general statements about the defendant's conduct and his juvenile criminal history. *Bellard* at ¶17. Further, in *Farnsworth*, *supra*, 7th Dist. No. 12 CO 10, this

court held that the trial court making only two of the three required findings warranted reversal for resentencing. *Id.* at ¶10-12.

**{¶56}** By contrast, in this case, when considering both the sentencing hearing and the sentencing entry, the trial court made all of the required findings. During the sentencing hearing the trial court stated:

> Under House Bill 86, the legislature has revived language regarding what a court is to consider. The Court is to consider concurrent sentences as a first consideration, but under 2929.14, the Court is permitted to impose discretionary consecutive terms. The Court may require the offender to serve prison terms consecutively if the Court finds consecutive service is necessary to protect the public from future crime or to punish the offender, that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger the offender poses to the public.

> The Court would also have to find that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> * * *

> I don't know if pointing a gun at two different people heading two different directions could mean anything but that you are trying to kill two separate people. * * * So, the statutory findings recited by the Court and made by the Court justify a consecutive sentence of ten years on the charge of attempted murder of Eric Van Cobb.

> The Court also imposes three years of actual incarceration prior to and consecutively to the charge of murder in Count 1. The Court finds that

these are separate offenses committed against separate victims, and a merger of firearms specifications is repugnant to any sense of justice, any sense of right and wrong, and any desire of the legislature to reduce prison terms. * * * I believe the law justifies the finding that these firearms are separate and should be punished separately. So, the Defendant is ordered to serve a term of three years of maximum incarceration prior to and consecutively to the sentence imposed for the attempted murder of Eric Van Cobb. All of these sentences are to be served consecutively to one another. (Sentencing Tr. 25-27.)

**{¶57}** In the judgment entry of sentence, the trial court stated:

The sentence imposed on Count Two is Ordered to be served consecutively to the sentence imposed on Count One pursuant to O.R.C. 2929.14(E)(4) and [Div. (C)(4) under House Bill 86], in that the Court finds that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." (10/25/11 J.E.)

**{¶58}** These findings comport with R.C. 2929.14(C)(4) and they are supported by the record. Therefore the trial court properly imposed consecutive sentences for Appellant's murder and attempted murder convictions.

**{¶59}** Thus, while I disagree with the majority's use of the *Kalish* standard of review, I would nonetheless affirm the judgment of the trial court. The sentence is

not clearly and convincingly contrary to law, nor are the trial court's findings unsupported by the record.