[Cite as *State v. Rose*, 2014-Ohio-2929.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 JE 18 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SOL ROSE, III | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Jefferson County, Ohio
Case No. 12 CR 32

JUDGMENT: Affirmed.

APPEARANCES:
For Plaintiff-Appellee: Atty. Jane M. Hanlin
Prosecuting Attorney
Atty. Jeffrey J. Bruzzese
Assistant Prosecuting Attorney
Jefferson County Justice Center
16001 State Route 7
Steubenville, Ohio  43952

For Defendant-Appellant: Atty. Bernard C. Battistel
P.O. Box 803
Steubenville, Ohio  43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated:  June 26, 2014

WAITE, J.

{¶1} Appellant Sol Rose III appeals his felony convictions for aggravated robbery and felonious assault from the Jefferson County Court of Common Pleas. On appeal, Appellant raises four issues in three assignments of error: the weight of the evidence against him, ineffective assistance of counsel, that his consecutive sentences were contrary to law, and that his convictions were for allied offenses that should have merged for sentencing purposes. Appellant's arguments are without merit and are overruled. His convictions are affirmed.

Factual and Procedural History

{¶2} Appellant was indicted on February 24, 2012 by the Jefferson County Grand Jury on three counts: (a) aggravated robbery a first degree felony violation of R.C. 2911.01(A)(3); (b) felonious assault, a first degree felony violation of R.C. 2903.11(A)(1); and (c) felonious assault, a second degree felony violation of R.C. 2903.11(A)(2). All three relate to an attack on Jason Plaugher in the early morning of February 11, 2012. Appellant followed Plaugher from the Speedway gas station near his house after observing the victim make a purchase and place over thirty dollars in change in his wallet. On his way home from the Speedway, Plaugher realized he was being followed and turned to confront Appellant, who initially denied that he was following Plaugher. Plaugher continued home, but as he began to ascend the stairs to his front door, he was pulled back down the stairs by the hood of his sweatshirt and stabbed repeatedly from behind until his upstairs neighbor, Charles Barnhart, threw a chair from his window and struck Appellant in the head. Appellant ran, taking

with him Plaugher's wallet and medication. Barnhart called 9-1-1 from his apartment and then went to help the victim.

{¶3}    Plaugher was treated for injuries to his head, neck, and back. He was able to give a statement and turned his sweatshirt over to police as evidence. Plaugher first identified Appellant as his assailant in a photo array and again in an in-person line-up. Plaugher was confident in the identification because he had faced Appellant when he confronted him about following Plaugher home.

{¶4}    Appellant was tried by a jury and convicted in May of 2012. At sentencing, the trial court merged Appellant's two felonious assault convictions. The state elected to proceed to sentencing on count two, the first degree felonious assault conviction. The trial court sentenced Appellant to six years on count one, aggravated robbery and five years on count two, felonious assault, for a total sentence of eleven years. Appellant filed a timely appeal of his sentence.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5}    In Appellant's first assignment of error he challenges the jury's decision to convict him on aggravated robbery and felonious assault charges resulting from the stabbing. On appeal, Appellant emphasizes the record reflects an absence of DNA evidence, the weapon, and the victim's belongings. Appellant also alleges that there were contradictions in Plaugher's testimony. According to Appellant, the fact that Barnhart said the victim was "incoherent" after being stabbed fourteen times and

that Plaugher testified that his recollection of the morning was impaired because he lost so much blood and was taking pain medication should outweigh the evidentiary value of his statements. Appellant believes we should ignore the conclusions of the jury, and instead place more weight on the absence of certain types of evidence than on the testimony of the various witnesses to the events of February 11, 2012.

{¶6} A challenge to the manifest weight of the evidence addresses not the mere existence of evidence on each element, but the effect of that evidence in inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Even where a reviewing court finds a verdict is supported by sufficient evidence, the verdict may be found to be against the manifest weight of the evidence. *Id.* To evaluate the manifest weight of the evidence, an appellate court reviews the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other * * * the party having the burden of proof will be entitled to their verdict, if [the jury], on weighing the evidence in their minds, * * * shall find the *greater amount of credible evidence* sustains the issue

which is to be established before them.  Weight is not a question of mathematics * * *'" (Emphasis sic.)  *Thompkins* at 387.  Although the reviewing court is sometimes described as "the thirteenth juror" when conducting this review; the weight to be given the evidence and the credibility of the witnesses are still primarily for the trier of fact to determine.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶7}  In Appellant's challenge to the evidence supporting his conviction, he does not cite to any evidence in the record which may tend to exonerate him.  Instead, he relies on the fact that DNA analysis of a pair of Appellant's pants did not reveal genetic traces of the victim, the fact that the chair that allegedly ended the attack was not examined for DNA evidence, the fact that the victim's belongings were not recovered, and the fact that the weapon was not recovered.  Appellant does not explain why the absence of this evidence should be given more weight than the testimony presented at trial, nor does he offer any legal support for this conclusion.

{¶8}  The testimony of Mr. Plaugher, the victim, reveals that he was at the Speedway in the early hours of February 11, 2012.  The victim described both the Speedway and the surrounding area as reasonably well lit due to streetlights and lighting on nearby properties, including Steubenville High School.  He said that he purchased some soda with cash and received more than $30.00 in change while Appellant stood near enough to view the transaction.  The victim said that he left the Speedway and noted that Appellant seemed to be following him as he travelled to his home.  At one point, concerned by Appellant's continued presence on his route

home, Plaugher addressed Appellant face to face and told him that since he did not belong there, he should not be in the area. (Tr. Vol. II, p. 244.)

{¶9} Plaugher continued toward his apartment. As he started up the front stairs, he was attacked from behind and to the left. His attacker pulled him backwards using his hood, and stabbed him so violently that initially Plaugher thought he was being punched. The attacker demanded the victim's wallet and continued to assault him until an upstairs neighbor threw a chair out of the window, striking the attacker on the head. (Tr. Vol. II, p. 245.)

{¶10} When the police and an ambulance responded, Plaugher was able to give a description of Appellant. The victim was able to identify Appellant from the Speedway video by his clothing and confirmed that Appellant was the man he confronted on his way home. Plaugher later picked Appellant's photo out of a book, identified him in person in a line-up, and directly identified Appellant at trial. According to Plaugher's testimony, he has trouble recalling exactly the events of the night, but remembers being "belligerent" and cursing when being questioned at the scene. (Tr. Vol. II, p. 252.) Plaugher also described the extent of his injuries, and the lingering effect of damage to his head, nerves, and organs. Although Appellant refers to "numerous" inconsistencies in the victim's testimony, Appellant does not specifically identify a single inconsistency. A review of the various portions of the transcript cited by Appellant reflect repetitive and, at times, unclear questioning, but do not reflect inconsistent or contradictory testimony by Mr. Plaugher, himself.

**{¶11}** The Ohio Supreme Court has stated in *Thompkins*, *supra*, that when a reviewing court reverses a trial court judgment as against the weight of the evidence, the court "sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211 (1982). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id*. Appellant does not identify any conflict or deficiency in the record that would support a conclusion that the jury "in resolving conflicts in the evidence * * * clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Id.* Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE FAILURE OF DEFENSE COUNSEL TO SECURE COMPLETE CROSS-EXAMINATION AS WELL AS OTHER DEFICIENCIES RESULTED IN PREJUDICIAL ERROR AND INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶12}** Appellant contends that his counsel's cross-examination of the state's law enforcement witnesses was unproductive and limited, that the testimony of a defense witness was undermined by her personal relationship with counsel, and that his counsel's confusion when attempting to admit exhibits into evidence resulted in ineffective assistance. To prevail on a claim of ineffective assistance of counsel, Appellant must show not only that counsel's performance was deficient, but also that

he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984); *see also State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶107. "Deficient performance" means performance falling below an objective standard of reasonable representation. *Strickland* at 687-688. "Prejudice," in this context, means a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

{¶13} The United States Supreme Court originally explained in *Strickland v. Washington* that an "ineffectiveness claim * * * is an attack on the fundamental fairness of the proceeding whose result is challenged," and that, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 697, 670. A defendant/appellant's burden when challenging the effectiveness of counsel is to demonstrate that some action or inaction by counsel operated to undermine or call into question the integrity of the process that resulted in conviction. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E. 2d 905 (1999). When evaluating the performance of counsel, "courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶81. "Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 669. "It is all too tempting for a

defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

**{¶14}** Although Appellant notes the two prongs of the *Strickland* test, his arguments do not address prejudice, the second prong of the test. Because Appellant has failed to connect any of the alleged deficiencies of counsel to actual evidence of prejudice suffered by him, even if we were to conclude that counsel's performance was deficient, Appellant has not satisfied his burden under *Strickland*. Regardless, Appellant has not demonstrated that defense counsel's performance was deficient. The decisions and circumstances challenged by Appellant: counsel's decision to use law enforcement testimony rather than further victim testimony to establish the extent of injuries; the decision not to raise a possible discrepancy in the early descriptions of the pants worn by the attacker; the fact that defense counsel knew a defense witness personally; and that defense counsel appeared confused when seeking to admit some of the exhibits, do not undermine or call into question the integrity of the process that resulted in conviction. At worst, many of the decisions Appellant complains of appear to be trial tactic on the part of his counsel. Appellant has not identified any action or omission by defense counsel that rises to the level of a deficiency, and completely fails to address or identify any prejudice to the defense resulting from counsel's actions. Appellant's second assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO CONSECUTIVE TERMS OF IMPRISONMENT.[sic]

{¶15} In his third assignment of error Appellant combines two separate issues. He challenges the conclusions reached by the trial court concerning the seriousness and recidivism sections of R.C. 2929.12 and he alleges that his aggravated robbery and felonious assault convictions are allied offenses of similar import and should have been merged for sentencing purposes.

{¶16} With regard to Appellant's R.C. 2929.12 arguments, after hearing extended discussion from the state, defense counsel, and Appellant concerning his prior offenses, convictions, sentences, probation, drug use, and other criminal activities, the trial court stated:

I then have to consider the factors that are outlined in the Ohio Revised Code as has been indicated by the attorneys as to whether your conduct would be more or less serious than someone charged with the same or similar offense.

Under the more serious factors I do have to find that there was serious physical harm. There were multiple stab wounds. * * *

* * *

[t]here were multiple stab wounds. There's permanent injury that has been caused to the victim in the way of his vision impairment and by way of scarring.

Under the less serious factors, none of those apply. Therefore, the more serious factors have to outweigh the less serious factors.

Then when I look at the recidivism likely and not likely factors, that is the factors which would indicate that it's more or less likely that you will commit other offense, I do have to find that you have the prior criminal convictions, three prison terms as you have explained.

And under the recidivism not likely factors, none of those apply to you. So, the recidivism likely factors also outweigh the not likely factors.

* * *

I am going to find that your criminal history shows that consecutive terms are needed to protect the public and that further to sentence you only on one of the charges and to make them concurrent would not adequately reflect the seriousness of the crimes that have been committed.

(Sent. Tr., pp. 30-33.) The trial court's judgment entry reflected these findings:

The Court further finds that a prison sentence is consistent with the purposes and principles of sentencing under R.C. §2929.11 because a

prison sentence is commensurate with the seriousness of the offender's conduct and its impact on the victim, because it is reasonably necessary to deter the defendant in order to protect the public from future crime, and because it would not place an unnecessary burden on governmental resources.

The court finds that under ORC §2929.12(B) that the victim suffered serious physical harm, including multiple stab wounds, permanent impairment of the victim's vision; and scarring * * *

**[T]he recidivism likely factors outweigh the not likely factors** * * * the offense was so great or unusual that a single term does not adequately reflect the seriousness of the defendant's conduct and defendant's criminal history shows consecutive terms are needed to protect the public in that the defendant assaulted the victim from the rear, began stabbing the victim, stole the victim's wallet and only ceased stabbing the victim when a neighbor of the victim threw a chair at the defendant from a second story window." (Emphasis sic.)

(6/8/12 J.E., p. 2.) Appellant now contends that the trial court should have given greater weight to statements made during the sentencing hearing concerning Appellant's history of drug use and possible mental disability. Appellant also argues that the trial court should have recognized Appellant's continued assertions of innocence while expressing sympathy for the physical harm suffered by Plaugher as

remorse, weighing in favor of finding, pursuant to R.C. 2929.12(E)(5), that he felt genuine remorse for the crimes.

**{¶17}** Appellant did not object to the imposition of consecutive terms during his sentencing hearing, and has therefore waived all but a plain error review of his sentence. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶152, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶377. As we have previously noted, individuals who are sentenced after September 30, 2011 are subject to the version of R.C. 2929.14(C)(4) revised by H.B. 86, even if a plea was entered or verdict returned prior to that date. *State v. Williams*, 7th Dist. 11 MA 185, 2014-Ohio-1015, ¶27; *State v. Smith*, 7th Dist. 12 MA 168, 2014-Ohio-1398, ¶19.

**{¶18}** A trial court's decision to impose consecutive sentences is reviewed by us under the *Kalish* two-step approach. *Williams* and *Smith*, *supra*. The first step in our analysis is to determine the applicable legal standard, which in this instance is contained in R.C. 2953.08 "Appeals based on felony sentencing guidelines." R.C. 2953.08(G)(2) requires:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for

resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶19} Although Appellant is not specific, he apparently believes the record does not support the sentencing court's findings. As reflected above, the trial court in this instance specifically and exhaustively considered the relevant statutes, the principles and purposes of sentencing, and the information provided by defendant prior to the imposition of sentence. The court concluded that the viciousness of the crime, Appellant's criminal history, which includes repeated instances of criminal violence, refusal to accept responsibility for either the crime or his criminal history, and the absence of any clinical evidence of drug addiction, necessitated a greater penalty. (Sent. Tr., p. 24.) This record supports the trial court's conclusions. Appellant's sentences are not otherwise contrary to law. Nothing in this record or as raised by Appellant on appeal suggests that the trial court abused its discretion in imposing consecutive sentences. Appellant's R.C. 2929.12 argument against consecutive sentences is overruled.

**{¶20}** The law pertaining to allied offenses in Ohio is continually evolving, however the Supreme Court's plurality decision in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, contains the standard applied by the majority of Ohio appellate courts. "Allied offenses of similar import" are defined by R.C. 2941.25, which provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Although the statute has remained unchanged by the legislature since its passage in 1972 (effective January 1, 1974), Ohio jurisprudence has shifted from a contextual analysis of the facts of each individual case, to an objective comparison of the statutory elements of each offense, before this most recent return, in *Johnson*, to a fact-driven analysis. *Johnson*, *supra.*

**{¶21}** Pursuant to *Johnson*, a trial or reviewing court determines whether the "offenses are allied offenses of similar import" by applying two stages of analysis. *Johnson, supra*, ¶48. First, the court determines "whether the offenses were

committed by the same conduct," and "whether it is possible to commit one offense *and* commit the other with the same conduct" but not "whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id.* at ¶47-48.

**{¶22}** If the answer to both questions is "yes," and the "offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id.* at ¶48. If, on the other hand, "the court determines that the commission of one offense will *never* result in the commission of the other," then the offenses are not allied and do not merge. (Emphasis sic.) *Id.* at ¶51.

**{¶23}** The analysis does not stop there, however. If the court identifies offenses of similar import, it must consider whether the offenses were committed separately, or if the defendant had separate animus for each offense. *Id.* at ¶51. If the offenses were committed separately or there was separate animus for each, they remain separate offenses for sentencing purposes. *Id.* When deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, syllabus.

**{¶24}** Because the test for allied offenses is now both case and fact specific, it "may result in varying results for the same set of offenses in different cases." *Johnson* at ¶52. An "appellate court reviews the legal conclusion of whether the

offenses are allied using a de novo standard, but because the trial judge is the fact-finder, the trial court's determinations as to the facts are not reviewable de novo." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶30. "In fact, the appellate court should defer to the factual findings of the trial court, provided they are supported by some competent, credible evidence." *Id.*

**{¶25}** Appellant's argument in support of this final argument does not address the *Johnson* test or any other legal analysis or standard. Instead, Appellant asserts that because a "theft offense" is the only distinguishing factor between the two criminal statutes, his offenses should merge for sentencing purposes. As Appellant's own cursory analysis establishes, the elements of the crimes do not correspond to such a degree that the commission of one will necessarily result in the commission of another. Appellant was convicted of aggravated robbery, a violation of R.C. 2929.11.01(A)(3), which criminalizes the commission of a theft offense while armed with a deadly weapon: in this instance, a knife. Appellant was also convicted of felonious assault, a violation of R.C. 2903.11(A)(1) which criminalizes the knowing physical harm of another with a deadly weapon, a knife, as well as knowingly doing serious physical harm to another. Appellant was guilty of felonious assault under either theory: he caused physical harm to another with a deadly weapon and in so doing caused serious physical harm.

**{¶26}** As the Tenth District Court of Appeals recently noted, "the dominant animus for aggravated robbery is theft." *State v. Michael*, 10th Dist. No. 13AP-436, 2014-Ohio-125, ¶12. The "dominant animus for felonious assault," on the other

hand, is "the doing of physical harm." *Id.* Appellant feloniously assaulted Mr. Plaugher by repeatedly stabbing him in the head, neck, and kidneys with a knife. Appellant committed aggravated robbery when he took Plaugher's wallet while holding a knife. While the knife is a common element of the two crimes, Appellant's different conduct satisfied the elements of each offense. Moreover, because the animus for each crime is separate, R.C. 2941.25 does not apply to require merger. Appellant's third assignment of error is without merit and is overruled in its entirety.

## Conclusion

**{¶27}** Appellant's convictions were not against the manifest weight of the evidence. Appellant received effective assistance of counsel. Appellant's convictions were not allied offenses and do not merge for sentencing purposes. The trial court properly applied controlling law when imposing consecutive sentences. Appellant's sentence is not otherwise contrary to law or an abuse of discretion. Appellant's three assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.